# WHEELING.

1873.
June Term.

FAUSLER VS. PARSONS ET ALS.

ANDREW FAUSLER, PLAINTIFF IN THE ACTION AND IN
ERROR *against* ENOCH MINEAR, JACOB W. PARSONS
AND JAMES W. MILLER, MEMBERS OF THE BOARD
OF REGISTRATION OF TUCKER COUNTY, DEFEN-
DANTS IN THE ACTION AND IN ERROR.

Decided July 17th, 1873.

## SYLLABUS.

1. Where the subject matter and the person are within the jurisdic-
tion of the court, the judge, whether of a superior or inferior court,
is not subject to a civil action for any matter done by him in the
exercise of his judicial functions.

2. By virtue of sec. 8, Chap. 78, Acts 1866, the members of the County
Board of Registration acting thereunder, and passing upon the
right of a party to be registered or not, acted judicially; and if
they acted within their jurisdiction, limited by the statute, they
are not amenable in a civil action.

1873.
June Term.

Fausler
v.
Parsons et als.

This is an action of trespass on the case from the Circuit Court of Tucker county. The Plaintiff avers in his declaration that, at the time of the commission of the several grievances by the Defendant, he was a white male citizen of the State, twenty-one years of age, that he had then been a resident of the State for a year, and of the county of Tucker for thirty days, that he had been, by the duly appointed registrar of Black Fork township, registered as a voter, and that he was then and there duly qualified to vote.

"And thereupon the Plaintiff further says, that the said Defendants having theretofore been duly appointed and constituted the Board of Registration for the county of Tucker, of the State aforesaid, and having theretofore taken upon themselves the duties of said Board, the said Defendants, intending to injure and disgrace as an alien the said Plaintiff, who, the said Plaintiff, was then and long before duly qualified to vote in the township of Black Fork, of the county and State aforesaid, they, the said Defendants, did, and each of them did, as members of the said board as aforesaid, on the—day of——, 1866, at the county aforesaid, wilfully, unlawfully, knowingly, maliciously, and corruptly, and without sufficient cause, exclude and erase the name of the Plaintiff from the list of registered voters within the said township of Black Fork, of the county and State aforesaid, said list of registered voters having been made according to the law in such case made and provided, and by the duly appointed Registrar in and for the said township of Black Fork, in which list of registered voters was the name of the Plaintiff, having been duly and rightfully registered therein, by which said exclusion and erasure, made wilfully, unlawfully, knowingly, maliciously, and corruptly, and without sufficient cause as aforesaid, the Plaintiff was, in the said township of Black Fork at the general election held therein on the fourth Thursday (the 25th day) of October 1866, deprived of the right to vote, he there and then, at said election, desiring to vote, to his,

the said Plaintiff's, great ignominy and disgrace among the good and loyal citizens of the county of Tucker and State of West Virginia, and to the damage of the Plaintiff ten thounsand dollars."

The declaration contained several other counts, but they need not be considered.

The Defendants demurred to the declaration and to each count thereof, and the Court sustained the demurrer.

MOORE, Judge.

The Plaintiff, on the first day of January 1867, sued out of the clerk's office of the Circuit Court of Tucker county, a summons against the Defendants to answer him of a plea of trespass on the case. The cause having been remanded to rules with leave to file an amended declaration, the Plaintiff on the first Monday in February 1868, at rules, filed his amended declaration. On the third day of March 1869, in term of Court, the Defendants demurred generally to the amended declaration, and to each count thereof. Demurrer was sustained by the Court, and the Plaintiff has appealed from that judgment.

The question submitted by argument in support of the demurrer is, "Whether judicial officers, or officers performing judicial duties and acts, are liable to be sued for such acts."

The solution of the question depends on the kind of officers and their jurisdiction.

In the case of Bradley vs. Fisher, 13 Wallace, 335, it was held that judges of courts of record of superior or general jurisdiction, are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. In that case, Mr. Justice Field, in delivering the opinion of the court, (p. 354,) said; "The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts ex-

1873.
June Term.

Fausler
v.
Parsons et als.

isting when there is jurisdiction of the subject matter, though irregularity and error attend the exercise of the jurisdiction, the exemption cannot be affected by any consideration of the motives with which the acts are done. The allegation of malicious or corrupt motives, could always be made, and if the motives could be inquired into judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed."

Judge Cooley, with his usual correctness in eliminating authorities, in his most excellent work on Constitutional Limitations, p. 405, *et seq.* and notes, says; "Some courts are of general jurisdiction, by which is meant that their authority extends to a great variety of matters ; while others are only of special and limited jurisdiction, by which it is understood that they have authority extending only to certain special cases. The want of jurisdiction is equally fatal in the proceedings of each; but different rules prevail in showing it. It is not to be assumed that a court of general jurisdiction has in any case proceeded to adjudge upon matters over which it had no authority ; and its jurisdiction, is to be presumed, whether there are recitals in its records to show it or not. On the other hand, no such intendment is made in favor of the judgment of a court of limited jurisdiction, but the recitals contained in the minutes of proceedings must be sufficient to show that the case was one which

the law permitted the court to take cognizance of, and that the parties were subjected to its jurisdiction by proper process."

"There is also another difference between these two classes of tribunals in this, that the jurisdiction of the one may be disproved under circumstances where it would not be allowed in the case of the other. A record is not commonly suffered to be contradicted by parol evidence; but wherever a fact showing want of jurisdiction in a court of general jurisdiction can be proved without contradicting its recitals, it is allowable to do so, and thus defeat its effect. But in the case of a court of special and limited authority, it is permitted to go still further, and to show a want of jurisdiction even in opposition to the recitals contained in the record."

"No person is liable in a civil action for what he has done as a judge, while acting within the limits of his jurisdiction; Burnham *vs.* Stevens, 33 N. H., 247. But it is to be further remarked, that, if persons having a *special* or *limited* judicial authority, do any act beyond the scope of their authority, they make themselves trespassers." Blood *vs.* Sayre, 17 Verm., 609.    *    *    *

"The general rule of law, as to actions of trespass against persons having a limited authority, is plain and clear. If they do any act beyond the limit of their authority, they thereby subject themselves to an action of trespass; but if the act done be within the limit of their authority, although it may be done through an erroneous or mistaken judgment, they are not thereby liable to such an action. Doswell *vs.* Impey, 1 B. & C., 169; acc. Miller *vs.* Seare, 2 W. Bl., 1141." Hilliard on Torts, 186.

And this is upon the principle, that judicial protection extends to all judicial tribunals, and is necessary to promote the independence and firmness of the judiciary which must guard and protect, within due bounds, the life, liberty and property of the citizen, as also the rights of the State. In the language of Chief Justice Kent,

1873.
June Term.

Fausler
v.
Parsons et als.

"No man can see the disastrous consequences of a prece-dent in favor of such a suit. Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence and destroy their authority. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon every thing sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty."

It seems, therefore, settled that where the subject matter and the person are within the jurisdiction of the courts, the judge, whether of a superior or inferior court, is not subject to a civil action for any matter done by him in the exercise of his judicial functions. "He is not bound, at the peril of an action for damages, or personal controversy, to decide right, in matter either of law or fact; but to decide according to his own convictions of right, of which his recorded judgment is the test, and must be taken to be conclusive evidence. Such of necessity, is the nature of the trust assumed by all on whom judicial power, in greater or lesser measure, is conferred. This trust is fulfilled when he honestly decides according to the conclusions of his own mind in a given case, although there may be great conflict of evidence, great doubts of the law, and when another mind might honestly come to a different conclusion, * * * * * *. Now it is manifest that to every controversy there are two sides, and that a decision in favor of one must be against another. And this may extend to every interest which men hold most dear; to property, reputation and liberty, civil and social; to political and religious privileges; to all that makes life desirable, and to life itself. If an action might be brought against the judge by a party feeling himself aggrieved, the judge would be compelled to put in issue facts in which he has no interest, and the case must be tried before some other judge, who, in his turn, might be held amenable to the losing party, and so

on indefinitely. If it be said, that it may be conceded that the action will not lie unless in a case where a judge has acted partially or corruptly, the answer is, that the losing party may always aver that the judge has acted partially or corruptly, and may offer testimony of by-standers or others to prove it; and these proofs are ad-dressed to the Court and jury, before whom the judge is called to defend himself, and the result is made to de-pend not upon his own original conviction, the conclu-sion of his own mind in the decision of the original case, as by the theory of jurisprudence it ought to do, but upon the conclusions of other minds, under the influence of other and different considerations." 2 Hilliard on Torts pp. 171, 172. If it is a judicial act, done within his jurisdiction, he should not be called upon to answer for it elsewhere in a civil action; and, "these rules extend as well to a justice of the peace as to any other judicial officer, acting within his jurisdiction, in a judicial capaci-ty." 2 Hilliard on Torts, p. 180 and note; and extends to jurors, because they act judicially in judging the facts; as held by the Court of K. B. in the case of Groenvelt vs. Burwell, 12 Mod. 386, 1 Salk. 396 and 1 Ld. Raym. 459, cited in opinion of Kent in case of Yates vs. Lansing.

Chief Justice Duvall, in delivering the opinion of the Court in Chrisman vs. Bruce 1 Duvall's Ky. R. 66, says; "The courts of Massachusetts, and perhaps of some of the other States, have adhered to the doctrine of the English cases, which decide that an action is maintainable against officers who preside at an election for refusing the vote of a qualified voter, even though they may have exercis-ed an honest and fair judgment on the question before them." But, the learned judge adds, that the Court of Appeals of Kentucky, "has, however, adopted a more equitable and consistent rule, and which more adequately protects such officers in the faithful discharge of their duties. In passing upon the qualifications of a person offering to vote, the judge of the election acts judicially, and is not unfrequently called upon to determine legal

questions of great difficulty and doubt. To hold him responsible, in such cases, for a mere error of judgment by which a citizen may have been illegally deprived of his right to vote, would be unjust in principle and unwise in policy ; for the natural result would be to deter honest and capable men for accepting an office attended with such hazards. Hence, in the case Morgan *vs.* Dudley 18 B Mon., 711, the rule was distinctly announced and acted upon : That, as every human tribunal was liable to err, no judge, even of the most inferior one, should be held responsible for a more error of judgment committed in the regular discharge of his official duties, and that, although the judge of an election may err in determining upon the legality of a vote offered to be given, and thus reject a legally qualified voter, yet if the decision was the result of a mere error of judgment, and was not induced by improper motives, no action can be maintained on account of such erroneous decision."

"But this doctrine, whilst it thus affords protection to the officer in the honest discharge of official duty, does not deny redress to the citizen, who has been wilfully and knowingly deprived of his right to vote. It is an invaluable right. As was said by Lord Holt in a celebrated case, "a right that a man has to give his vote at the election of a person to represent him in Parliament, there to concur in the making of laws which are to bind his liberty and property, is a most transcendent thing." Ashley *vs.* White, 2 Raym. 950. Here, it is the fundamental right ; all other rights, civil and political, depend on the free exercise of this one, and any material impairment of it is, to that extent, a subversion of our political system. Hence the care with which any invasion of this right, from every possible source, has been guarded against."

It is true there are a number of authorities sanctioning civil actions against *election officers and selectment,* where they have acted *corruptly,* or *knowingly and unlawfully* refused to register a voter, or receive his vote,

but in nearly all the cases they have been regulated by statute or constitution; and the decision in such cases turned upon that fact. The most of the cases cited in 2 Rob. (New) Practice, 575, 576, were of that class; so was the case of Gordon *vs.* Farrar et als, 2 Doug. Mich. R. p. 411. Other cases were where they acted without jurisdiction, and thus became usurpers and trespassers.

We now recur to the question before us, did the Defendants act in a *judicial* capacity in erasing the name of Plaintiff from the register of voters?

It was made the duty of the County Board of Registration, by Chap. 87, sec. 8, acts 1866, to examine the Registrar's book; section also declared; "And if they are satisfied that any person has been registered who has been guilty of any of the acts enumerated in the affidavit contained in the third section of this act, or is in any way disqualified to vote, under the provisions thereof, it shall be the duty of the said board, upon proof of any such act or disqualification, to exclude the name of such person from the list of registered voters. But the party whose name is proposed to be excluded, shall have due notice of the time and place of taking the evidence to prove his disqualification, which evidence he shall have the right to rebut, and shall have his name restored to such list if improperly stricken therefrom."

There certainly can be no question that the Defendants acting under that section, and passing upon the right of a party to be registered or not, acted judicially; and if they acted within their jurisdiction, as required by the statute, they are not amenable to the Plaintiff in a civil action. But if they exceeded their jurisdiction and did not comply with the requisitions of the statute, but erased the name of the Plaintiff from the register of voters, without giving him due notice of the time and place of taking the evidence &c., or refused him the right to rebut the evidence, it would have been a usurpation of authority, and such a violation of law as to have made them trespassers, and amenable in an action, by

the Plaintiff, for damages; because their authority was prescribed and limited by the act of the Legislature, and they had no right to exceed that limit, but acted without jurisdiction, and

Therefore, I am brought to the conclusion, that the allegations in the declaration are not sufficient in law. The mere allegations of *"wilfully, unlawfully, knowingly, maliciously and corruptly, and without sufficient cause, exclude and erase the name of the Plaintiff, &c.,"* do not make the declaration good, but the declaration must show by allegation how the Defendants acted *"wilfully," "unlawfully," "corruptly"* &c. Did they erase his name without giving him the notice required? Did they erase it without complying with the requirements of the statute? Did they act without jurisdiction? If so, the declaration should so allege, otherwise the Court will presume they acted within their *jurisdiction* and *judicially,* and will refuse to take jurisdiction of a case against them for mere error of judgment.

The demurrer was properly sustained.


HAYMOND, President, and HOFFMAN and PAULL, Judges, concur in the foregoing opinion.