STATE *ex rel.* MARY BETTY PAYNE, *etc.*

*v.*

E. L. MITCHELL, *Justice of the Peace, et al.*

(No. 12714)

Submitted September 17, 1968. Decided November 19, 1968.

*Katz, Katz & Kantor, David M. Katz, Norris Kantor, Bailey, Worrell, Camper & Viers, Harry G. Camper, Jr.,* for appellant.

*Barley & Goode, Grover C. Goode, Leon P. Miller,* for appellees.

BROWNING, JUDGE:

Plaintiff, Mary Betty Payne, instituted this action in the Circuit Court of McDowell County, for false arrest, false imprisonment and violation of her civil rights under T. 42, §1983 of the U. S. Code, alleging that on May 31, 1965, she was arrested on a warrant charging her with profanity and taken before a justice of the peace, who ordered her placed in jail where she was held for approximately eight hours before being released. She was subsequently, on June 3, 1965, tried and convicted and fined $10.00, which conviction was dismissed on motion of the state upon her appeal. The complaint alleges that her arrest and imprison-

ment were accomplished with profanity and threatening gestures on the part of the constable who arrested her and the justice of the peace; she was refused the right to telephone relatives or an attorney and was denied admission to bail. A copy of the warrant filed as an exhibit recites, in part, "Whereas Ralph Brash of said County has this day made complaint and information on oath . . . that Mrs. Mary Betty Payne of said County, on the 30th day of May, 1965, in said County, did unlawfully and profanely curse and swear in a public place and cause a disturbance of the peace, against the peace and dignity of the State of West Virginia." Named as defendants are the justice, the constable and their bonding company. Defendants answered denying any irregularities in the procedures against plaintiff and discovery depositions were taken in behalf of both plaintiff and defendants.

Mrs. Payne, the plaintiff, testified that she owned a home at Premier, McDowell County, and had resided there for approximately five years; a sewer line runs by her house to a culvert resulting in some difficulties in the past; and that on May 29, 1965, a Saturday, five of her neighbors met by her property alleging the sewer line to be stopped up, she had a stick but did not raise it, no profanity was used by either side, but that "I told Ralph I'm going to the law, I can't stand that filth any longer. You could get hepatitis or typhoid fever from it. He said, you don't own this. I said, I've got the deed for it. I'll take you for a warrant for trespassing." She further testified that on May 31, 1965, at approximately 4:30 p.m., Constable Mays arrived at her home, broke her screen door and informed her he had a warrant for her for fighting and disturbing the peace; she changed her clothes and accompanied him outside where she observed a neighbor and shouted to him, "Hey Alfred, did you hear any cussing or fighting or shooting down there?"; she got into the car and was "humiliated" all the way to the justice of the peace; the justice said "Take her to jail. Get her out of here."; she asked permission to call her daughter and her lawyer and was refused and also asked the amount of her bond to which no reply was made; at the jail she was again refused per-

mission to telephone but through the services of some children outside the jail, her daughter was contacted and she was released at approximately 11:00 p.m.

Ralph Brash testified: that on May 29, he and another man had gone to unstop the sewer; that plaintiff threatened them with a broom handle and called them "dirty trash"; that he went to the justice two days later, told the justice of his complaint and the warrant was sworn to before "the girl" in the justice's office.

John Mays, the constable, states that he picked up the warrant for Mrs. Payne at the office of Justice of the Peace Mitchell on the evening of Monday, the 31st; went to plaintiff's home and informed her of the warrant, did not break in her screen door, did not use any profanity or threaten her in any way; did not show her the warrant because she did not ask to see it; she talked to a neighbor in leaving the home; he took her to the justice and "she got a little loud and he told me to take her and put her in jail, that he was afraid she would go back over there and get in some trouble with those people;" there was no one present to go her bail; and, Mrs. Payne might have requested permission to telephone at the jail.

Mitchell, the justice of the peace, testified that Brash told him Mrs. Payne was calling him "all kinds of names", he asked Brash if he wanted ". . . to make this complaint under oath and he said he did. I told him to go around to the window and give the girl the information and see about the warrant", and he thereafter issued the warrant for "profanity and disturbance of the peace." He further stated that when she was brought before him by Constable Mays he did not read the warrant to her, she did not ask to call a lawyer or to his recollection, anyone else; he did not set bail as no one was present to give bail for her; he later set bail at $500.00 around 9:00 p.m.; and, he thought it necessary to place her in jail "Because she was in a rage over them people."

Defendants moved for summary judgment on the basis of the pleadings and discovery depositions which motion the court sustained on March 14, 1967, a motion to set

aside such judgment was overruled and plaintiff applied to this Court for an appeal which was granted on December 4, 1967.

It may be that upon a full development of the facts in this case it will be found that the defendants are without liability to the plaintiff in this action upon the authority of the cases cited by counsel for the defendants. In the early case of *Fausler* v. *Parsons*, 6 W. Va. 486, this Court held that where the subject matter and the person are within the jurisdiction of a court the judge thereof is not subject to a civil action for any minor matter done by him "in the exercise of his judicial functions." In the recent Virginia case of *Berry* v. *Smith*, 148 Va. 424, 139 S. E. 252, 55 A. L. R. 279, it was held that judicial officers "acting within their jurisdiction" are exempt from civil liability for official acts even though it is alleged that such acts were malicious and corrupt. We have carefully considered also the very recent decision of the Supreme Court of the United States in *Pierson, et al.* v. *Ray, et al.*, 386 U. S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288, decided April 11, 1967. Succinctly the holding in that case was to the effect that the civil rights act did not abolish the immunity of judges for acts "within the judicial role." However, as will hereinafter be noted, there is a conflict of evidence upon what might be material points and we are of the opinion that the case is insufficiently developed to determine whether this case falls within the category of the authorities heretofore cited.

Counsel for the plaintiff rely upon the provisions of Code, 62-1-6, as amended, which reads as follows: "The justice shall in plain terms inform the defendant of the nature of the complaint against him, of his right to counsel and, if the offense is to be presented for indictment, of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. He shall provide the defendant reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail. The defendant shall not be

committed to jail or removed from the county of arrest until he has had a reasonable opportunity to confer with counsel or to arrange bail. He may be detained under such security measures as the circumstances warrant. If the defendant is unable to provide bail or if the offense is unbailable, he shall be committed to jail." This enactment, Chapter 38, Acts of the Legislature, Regular Session, 1965, replaced Code, 50-18-4, as amended, but the new legislation, although passed on March 5, 1965, was not effective until ninety days from passage, which was subsequent to May 31, 1965, the day defendant was arrested and imprisoned. Code, 50-18-4, as amended, remained in effect as of the latter date and provided as follows: "The warrant of arrest shall be issued only on the information, under oath, of some credible person. It shall describe the offense alleged to have been committed, as heretofore required in such cases by law, and command the officer forthwith to apprehend the accused and bring him before the justice to be dealt with according to law." One of the factual questions which must be more fully developed by evidence is whether the warrant for the arrest of the plaintiff issued "on the information, under oath, of some credible person." As heretofore noted the complaining party, Brash, said "the girl" swore him in. It is contended in the brief of counsel for the defendants that this section would be substantially complied with if the oath was administered in the justice's presence by his "clerk-notary". That person did not give evidence in the discovery proceedings and the legal import of what she might have done is unresolved.

It is apparent from the language used in the warrant that an attempt was made to accuse the defendant of two criminal offenses. This is the pertinent language: ". . . Did unlawfully and profanely curse and swear in a public place and cause a disturbance of the peace against the peace and dignity of the State of West Virginia." The penalty for using profane language in a public place is by Code, 61-8-15, as amended, "one dollar for each offense." This Court, apparently, has never determined what language must be used to come within the prohibition of that section, but it has been held that an indictment for a breach

of the peace cannot be considered as an indictment for profane swearing. *State v. Steger*, 94 W. Va. 576, 119 S. E. 682, 34 A. L. R. 570. The complaining witness said that the plaintiff called him "dirty trash" and we are of the view that that language would not violate the inhibition against profanely cursing or swearing. The justice, when asked what the complaining witness had told him that the plaintiff said, stated: "He said she was calling him all kinds of names, and so on." The following question and answer are a part of the testimony of the justice: "Q. Did he relate to you what the profanity words were? A. No, he didn't." Whatever she said, it appears to the Court that material facts as to the circumstances surrounding her utterances and her subsequent incarceration are lacking in the present record.

That brings us to a consideration of the alleged charge of "disturbing the peace." We find no such statutory offense in this state and counsel for the defendants have cited no authority to the contrary. However, such was a criminal offense at the common law and, under the provisions of Article VIII, Section 21 of the Constitution of this State, the common law is still in force where it has not been altered by Acts of the Legislature. We have researched that question and such is apparently only an offense where there is a disturbance of the public peace violative of order and decency or decorum. *State v. Whitt*, 96 W. Va. 268, 122 S. E. 742. See also, *State v. Steger*, 94 W. Va. 576, 119 S. E. 682, 34 A. L. R. 570; 12 Am. Jur. 2d, Breach of Peace, §2; 11 C. J. S. 817, Breach of Peace, §2. It would appear from the testimony of Brash, the complaining witness, that when "she drawed back to hit me and Raymond Johnson" with a "stick" or "broom" she was standing on her land to which she had title in fee simple. Some of the evidence, including the plaintiff's, is vague in that regard and perhaps that is another factual question to be further developed at the trial, assuming that such facts may be controlling or at least persuasive with regard to a final determination of the principal issue in this case. In several cases since the rules of civil procedure became effective in the trial courts of this state in 1960 this Court has held that summary

judgment is not a substitute for a trial by a court or jury of an issue of fact and that it is indicated only when there is no genuine issue of fact to be tried. The following is a quotation from *Deane v. Kirsch*, 148 W. Va. 429, 135 S. E. 2d 295: "This Court has held that the summary judgment procedure provided by R. C. P. 56 is not a substitute for a trial by a court or a jury of an issue of fact, but it involves a determination that, as a matter of law, there is no genuine issue of fact to be tried. In the recent case of *Don F. Hatten, Adm'r., etc.* v. *Mason Realty Co., et al.,* 148 W. Va. 380, 135 S. E. 2d 236, . . . this statement from the opinion of the Court is pertinent to the issue decided by the Court in this case; '. . . that summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry is not desirable to clarify the application of the law; that the question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined; that a party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment; that summary judgment should be denied if there is involved conflicting testimony or varying inferences which may reasonably be drawn from evidence which is uncontradicted; and that even in a case in which the trial judge is of the opinion that he should direct a verdict for one or the other of the parties on factual issues involved, he should, nevertheless, ordinarily hear evidence and upon a trial direct a verdict rather than to try the case in advance on a motion for summary judgment.' To the same effect are the decisions of this Court in *Aetna Casualty and Surety Company* v. *Federal Insurance Company of New York,* 148 W. Va. 160, 133 S. E. 2d 770; and *Petros v. Kellas,* 146 W. Va. 619, 122 S. E. 2d 177."

We are of the view that there are genuine issues of fact in this case to be tried by a court or jury and the case will be reversed and remanded to the Circuit Court of McDowell County for that purpose.

*Reversed and remanded.*