475 S.E.2d 299

**Judith ROUSH, Appellant,**

v.

**John HEY, Pat Buchanan and Turner Broadcasting System, Inc., a corporation, and Cable News Network, Inc., a corporation, Appellees.**

**No. 22958.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1996.

Decided July 3, 1996.

Timothy N. Barber, Charleston, for Appellant.

Thomas R. Goodwin, Richard D. Owen, Alexander Marcia, Goodwin & Goodwin, Charleston, for Appellee Hey.

RECHT, Justice:

This case requires us to decide whether a circuit court judge has absolute immunity for remarks made on a national television program relating to the facts and personalities of a case in which the judge was involved. The Circuit Court of Kanawha County granted summary judgment in favor of the circuit court judge, holding that the judge was absolutely immune from any claims for damages for remarks which formed the defamation and false light claims filed against the judge.

We conclude that the judge's remarks made while appearing on a national television program were not "judicial acts" for which he should be absolutely immune and, therefore, reverse the decision of the trial court and remand for further proceedings.

I.

FACTS AND PROCEDURAL HISTORY

Judith Roush, the plaintiff below, was divorced in 1988. In the final order granting the divorce, Ms. Roush was awarded custody of the two children born of her marriage to Rodney Roush. The older of the two children reached the age of maturity and was not subject to further custody proceedings. The younger child, a daughter named Melissa, became the center of a custody contest between Ms. Roush and her former husband. The events surrounding the custody contest were the genesis of the present case.

Ms. Roush's former husband attempted to regain custody of the younger child by filing a petition to change custody. Mr. Roush alleged that he should regain custody because Ms. Roush was cohabiting with a man who was not her husband. The change of custody petition was assigned to the defendant John Hey, who was, during the relevant

portions of these proceedings, a judge of the Thirteenth Judicial Circuit.[1]

During the course of a hearing relating to the former husband's petition for change of custody, Judge Hey, upon learning that Ms. Roush's living arrangements included Ms. Roush, her daughter, and a man to whom she was not married, entered an order on August 23, 1989, which set forth a series of alternatives: (1) either Ms. Roush marry the person with whom she had been living, or failing that; (2) move from the house where she had been cohabiting with the person not her husband; or failing either of these alternatives (3) lose custody of her daughter.[2]

Following the entry of the order requiring Ms. Roush to make this choice, she filed a petition for a writ of prohibition in this Court to prohibit enforcement of the order, with a rule to show cause granted and returnable on November 7, 1989. As part of the relief sought in the writ of prohibition, Ms. Roush requested that in the event that a writ was granted and the matter remanded to the Circuit Court of Kanawha County, that Judge Hey be removed from any further consideration of the matter and a new circuit judge appointed.

The matter relating to Judge Hey's rather unusual order was argued before this Court on November 7, 1989, and the case was submitted for decision at the conclusion of that argument with no decision published until July 26, 1990.[3]

On November 8, 1989, the day following the oral argument before this Court, Judge Hey appeared on a national network television program known as "Crossfire" to discuss specific facts and issues concerning the custody case generally and the order relating to cohabitation and loss of custody specifically.[4]

---

1. Judge Hey retired upon disability under W. Va.Code 51–9–8 (1987) by Order of Governor Gaston Caperton dated April 22, 1994.

2. In addition to forcing Ms. Roush to choose between living with a person who was not her husband or losing custody of her daughter, the order also relieved her former husband from payment of alimony and child support for a period of thirty days.

3. In *Judith R. v. Hey*, 185 W.Va. 117, 405 S.E.2d 447 (1990), we granted the writ of prohibition

prohibiting the enforcement of the order entered on August 23, 1989, removing Judge Hey from presiding over the case upon remand, as well as reinstating child support and alimony.

4. The record in this case is sparse, containing only the pleadings, memoranda of law and the order granting the motion for summary judgment. There is nothing in the record discussing who invited Judge Hey to the television program and why he was invited.

## II.

### "CROSSFIRE" APPEARANCE

"Crossfire" is a nationwide television program dedicated to spirited discourse of politically and socially sensitive issues approached from opposite ends of the political spectrum. "Crossfire," at relevant times, was hosted by Pat Buchanan, who would express a position from the "right," and other individuals taking positions from the "left." The format usually includes two guests debating both sides of an issue relating to the topic of discussion on a particular program. *See Braden v. News World Communications,* 18 Media L.Rep. 2209, No. CA–10689'89, 1991 WL 161497 (D.C.Super.Ct. Mar. 1, 1991).[5]

While we know very little about the events leading up to Judge Hey's appearance on this television program, we do know from the complaint that he did appear, and during an on-air discussion, the following colloquy occurred:

By Mr. Buchanan:

[I]f a divorcée moves in with her boyfriend is that legitimate grounds to take her 14 year old daughter? Well it is in West Virginia. Divorced from Rodney Roush, Judith Roush and her daughter moved in with her boyfriend; her ex-husband sued charging Judith with an unfit mother; Judge Hey agreed and gave Judith an ultimatum—either marry your boyfriend or get out of his house or give up your daughter. Does shacking up make one an unfit parent or should West Virginia law, which says "yes," be thrown out as a relic of a darker age?

West Virginia law, it may be an old law, but it holds that cohabitation is lewd and lascivious conduct, it deals with … and a woman engaged in that is considered to be not of high moral character, in other words, it is legitimate consideration to the judge to make when this woman has a 13 or 14 year old daughter. So, it seems to me that he has ruled exactly as the law says he should rule.

By Judge Hey:

Which goes to prove one thing, Ms. Alred, you can't believe everything you read in the newspapers. I would not punish a child. I would not cut off child support for a child. What I did was cut off alimony. We are not a common law state …

She's talking about love and affection as if this were a stable family unit; this is not perhaps the first boyfriend, now, I won't get into the merits of this particular case, but I will give you hypothets. She's painted it as if it were a loving family unit; normally the boyfriend with whom they're … to use your word Mr. Buchanan, not mine, "shacked up" with today, in front of the children—teenage, impressionable children, is not necessarily going to be the boyfriend with whom she is living next week or even tomorrow.

She said this after … she lived with the mother, then she lived with the father, and the mother was going to lose, obviously, some child support. Now, there are two children involved, so, if the child is living with the father, the mother's child support is going to be reduced. So the mother obviously convinced the girl to come back with her.

My primary concern, now I want to make this clear, is for the welfare of that child and I don't think it is in the welfare, the best interest of a child 13 years old to see her mother sleeping with a man that is not her father, and next week there may be a different man in the house, and the third week there may be a third one.

I'm not into sexy kink Ms. Alred. I don't care what two consenting adults do in the privacy of their own quarters, but it genuinely concerns me when they do it in the presence of children—that concerns me.

By Mr. Buchanan:

Judge, would it be fair from listening to you that it wasn't simply cohabitation per se that was the totality of the problem as represented to you in that courtroom on the part of that woman—that there were

---

**5.** "Crossfire" airs five nights weekly on Cable News Network (CNN) reaching about 1,000,000 viewers and an unknown additional number in some 100 other countries. *Braden v. News World Communications,* 18 Media L. Rep. 2209, No. CA–10689'89, 1991 WL 161497 (D.C.Super.Ct. Mar. 1, 1991).

other factors which induced you to say, in effect, either get out of the house lady, marry the guy or give up that little girl.

By Judge Hey:

Very perceptive, Mr. Buchanan. There are obviously some things I can't discuss on television. Sure there were other factors. One of which, I, as the trial judge, had the opportunity to witness the demeanor of the witnesses and there were other factors involved that I cannot publicly air because the matter is still in litigation.[6]

These remarks became the core allegations of a defamation and false light complaint filed by Ms. Roush against Judge Hey, Pat Buchanan, Turner Broadcasting System, Inc., and Cable News Network, Inc.[7]

Judge Hey filed a motion for summary judgment asserting that he is immune from any civil liability for comments made while appearing on a television program by the application of the doctrine of absolute judicial immunity. The trial court agreed and granted summary judgment, dismissing the complaint on the ground that "Judge Hey was judicially immune from any civil liability for the acts alleged in the complaint to have been committed by the defendant, Judge Hey."

## III.

### STANDARD OF REVIEW

■ The standard of appellate review of a circuit court's entry of summary judgment is de novo. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

On this appeal, there is no dispute as to the facts of this case, and all parties agree that the governing principle of law is whether a judge is absolutely immune from civil liability for remarks made beyond the court-

room and on a nationally televised program with a debate format.

## IV.

### DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY

■ West Virginia has applied what is now known as the doctrine of absolute judicial immunity beginning with our decision in *Fausler v. Parsons*, 6 W.Va. 486 (1873), where members of the Tucker County Board of Registration acted in a judicial capacity to determine who had the right to be registered to vote. When one prospective voter was "excluded and erased" from the list of registered voters, he felt compelled to seek monetary damages from the members of the Board of Registration of Tucker County for the disgrace that he suffered by virtue of his exclusion as a voter among the good citizens of Tucker County. Judge Moore, speaking for this Court, and drawing on the seminal opinion of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871) (holding that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly"), held in Syllabus Point 1:

Where the subject matter and the person are within the jurisdiction of the court, the judge, whether of a superior or inferior court, is not subject to a civil action for any matter done by him in the exercise of his judicial functions.

Syllabus Point 1, *Fausler v. Parsons*, 6 W.Va. 486 (1873).

Thus began an unbroken line of cases committing this State to the common law rule that shields a judge from civil liability for any act taken in the exercise of a judicial duty.

*See Judith R. v. Hey*, 185 W.Va. 117, 122, 405 S.E.2d 447, 452 n. 3 (1990). Apparently, these remarks were not based on any evidence that was taken before Judge Hey and which the judge had apparently accepted based on hearsay outside any judicial setting.

---

6. While not part of the complaint, Judge Hey is also alleged to have commented that "[t]he elder of the church says she's been [to church] three times since [the child's] been living with her mother and this man, and I might point out, her grade point average while with her mother was 1.5 out of a 4.0 average, and while with the father was a 3.15 and further she has missed 22 out of 45 days while living with her mother."

7. Judge Hey's co-defendants have reached an out-of-court settlement with the plaintiff.

■ In *Pritchard v. Crouser*, we summarized the status of the judicial immunity doctrine in the following terms: "[w]hen acting in his judicial capacity a judge is immune from civil liability for any and all official acts." *Pritchard v. Crouser*, 175 W.Va. 310, 313, 332 S.E.2d 611, 614 (1985) (citing *Fausler v. Parsons*, 6 W.Va. 486 (1873) and *State ex rel. Payne v. Mitchell*, 152 W.Va. 448, 164 S.E.2d 201 (1968)). In *Pritchard*, Chief Justice Neely provides an informative summary tracing the heritage of the principles of judicial immunity and recognizing that despite its "ancient roots, judicial immunity has flourished rather than withered in American soil." *Id.* at 313, 332 S.E.2d at 614. We held in *Pritchard* that the doctrine of absolute judicial immunity precludes the award of costs against a judicial officer in a proceeding involving a writ of prohibition, finding no tenable distinction between costs and civil liability for damages with a resounding flourish: "[j]udicial immunity in West Virginia is absolute." *Id.* at 318, 332 S.E.2d at 619.

■ We did not deviate from our dedication to the doctrine of absolute judicial immunity when we last spoke on this subject in *Carey v. Dostert*, 185 W.Va. 247, 406 S.E.2d 678 (1991). *Carey* involved a civil action filed by a lawyer against a circuit judge based upon alleged defamatory comments made by the judge in an order to show cause entered in a companion case involving the lawyer. The comments were alleged to have been critical of the lawyer's professional reputation. The order was released, prior to its official entry, to a newspaper which published the details of the order in the county where the attorney practiced law.[8] This factual pattern produced the following syllabus points:

1. Judges are absolutely immune from civil liability for damages for actions taken in the exercise of their judicial duties.

2. A judge acting in his judicial capacity who provides the public with information contained in the public record, whether through the press or otherwise, or distributes copies of pleadings or other official court documents which are a part of the public record does not thereby give up the protection of judicial immunity.

Syllabus Points 1 and 2, *Carey v. Dostert*, 185 W.Va. 247, 406 S.E.2d 678 (1991).

Despite our continuous commitment to the principles of the doctrine of absolute judicial immunity, we have not until now analyzed whether judicial immunity reaches beyond the traditional judicial environment to a national television broadcast. While we are guided in a general way by all of our prior decisions, we need to probe further into the question of what constitutes a judicial act for purposes of judicial immunity in order to find a resolution in this case.

■ There are a number of opinions which trace the lineage of the common law doctrine of absolute judicial immunity. Two cases, however, stand as beacons to show the way to understanding and applying this time-honored tradition. The fusion of the holdings in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), and *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), cast the threshold two-part test as to when absolute judicial immunity should protect a judge from civil liability. Absolute judicial immunity applies (1) to all judicial acts unless (2) those acts fall clearly outside the judge's subject matter jurisdiction. *Bradley*, 80 U.S. (13 Wall.) at 351–352; *Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05; *see also Harper v. Merckle*, 638 F.2d 848, 858 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). If Judge Hey's comments were not judicial acts, then we need not probe further upon the question of jurisdiction.

■ Because determining what is a judicial act is encumbered with doubt and confusion, we need to search for characteristics or markers which might be common to all judicial acts. In *Stump v. Sparkman*, the United States Supreme Court, for the first time, endorsed a two-factor test for determining whether a judge's act is a "judicial" one. The first factor is whether the act was a

---

**8.** The precise identity of who released the order was never revealed; however, it was one of three suspects: the judge, the judge's secretary, or the judge's law clerk. *Id.* at 249, 406 S.E.2d at 681 & n. 9.

function normally performed by a judge. This turns on the nature of the act itself and not on the identity of the actor. The second factor is whether the parties dealt with the judge in his judicial capacity; this factor looks to the expectation of the parties. *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107.

■ We first analyze whether appearing on a nationally televised program, dedicated to contentious discussion of politically and socially sensitive issues, in order to vindicate a position expressed in a decision in a pending case relating to the custody of a child, is not a function normally performed by a judge. This precise question appears to be one of first impression. We can speculate that this is so because what Judge Hey did, and where he did it, is not traditionally a judicial function.

■ At this time, during our analysis of whether Judge Hey's comments were a judicial act deserving of immunity, we should try to understand why it is so important to protect a judge from the vagaries of being sued by every dissatisfied, disgruntled litigant. We must appreciate the reason for the doctrine of judicial immunity. Some of the policies that sustain the doctrine are expressed as follows: (1) insuring the finality of judgments; (2) protecting judicial independence; (3) avoiding continual attacks upon judges who may be sincere in their conduct; and (4) protecting the system of justice from falling into disrepute. These policies were first announced by Lord Coke in *Floyd v. Barker*, 77 Eng. Rep. 1305 (Star Chamber 1607). Jeffrey M. Shaman, et al., *Judicial Conduct & Ethics* § 14.01, at 491 (2d ed.1995).

Today it is generally recognized that the most important purpose of judicial immunity is to protect judicial independence. *See Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Forrester v. White*, 484 U.S. 219, 226–28, 108 S.Ct. 538, 543–45, 98 L.Ed.2d 555 (1988). Judges are at the vortex of the adjudicative process, a process that inevitably will disappoint many. Holding judges personally liable for their decisions would produce judicial timidity that would strike at the very heart of an independent and impartial judiciary. *Forrester*, 484 U.S. at 226–27, 108 S.Ct. at 543–44.

Will the cause of judicial independence be jeopardized if we do not immunize the comments of a judge made during the course of a debate on national television regarding the merits of one of his decisions? We think not. Judge Hey was not exercising any judicial prerogative or discretion. He was attempting to publicly defend to a national television audience an order, the basis of which was to condemn a single parent for cohabiting with a person to whom she was not married. Judicial immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches. *Id.* at 227, 108 S.Ct. at 544. Granting Judge Hey immunity under the facts and circumstances of this case would be protecting Judge Hey only because he is a judge and not because of the function that he was performing. *Id.*

If we were to cloak Judge Hey's remarks with the cover of judicial immunity, then we would be saying that any act performed by a judge, no matter under what circumstances, should be exempt from personal liability. We are prepared to protect the sanctity of the judicial immunity doctrine, but we are not prepared to make it so sweeping so as to mock the doctrine. We hold, then, that an appearance by a judge on a nationally televised program, dedicated to contentious discussion of politically and socially sensitive issues, in order to vindicate a position expressed in a decision relating to the custody of a child, is not a function normally performed by a judge.

Next, we analyze the second factor of whether the parties dealt with Judge Hey in his judicial capacity. This factor requires an examination of the "expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331. This factor is more problematic when applied to the facts of this case. Certainly, the parties expected that Judge Hey would adjudicate the controversy relating to the custody of their daughter Melissa; that decision is within a judge's discretion and judgment. A judicial act requires the kind of discretion or judgment aligned with the adjudication of a controversy (that is expected), and not the justification of that decision expressed during

a public debate with someone taking a view in opposition to that decision (that is not expected). The only appropriate forum to argue the qualitative merits of Judge Hey's decision is the West Virginia Supreme Court of Appeals (that is expected), and not a nationally televised program such as "Crossfire" (that is not expected). The only people who should be involved in arguing the merits of Judge Hey's decision are the lawyers for the respective parties (that is expected), and not the trial judge and another stranger to the case arguing the opposite view (that is not expected).

Another and possibly more compelling reason why the comments of a presiding judge explaining and justifying his decision on a nationwide television program is not within the expectation of the litigants is that there are specific rules prohibiting that type of conduct. It is not unreasonable that all persons involved in a dispute requiring judicial resolution would expect that the judge resolving that dispute would conform to standards of judicial conduct. One of those standards demands that "a judge shall not make any public or nonpublic comment about any pending or impending proceeding which might reasonably be expected to affect its outcome or impair its fairness...." Code of Judicial Conduct Canon 3(B)(9) (1992) (effective Jan. 1, 1993).[9]

The parties and the lawyers involved in this custody dispute might very well expect that Judge Hey's decision would be the subject of comment, praise, and criticism, but by people tangentially associated with this type of social and legal issue, including scholars, social workers, religious leaders, and even other judges not connected to the case. *See*

Code of Judicial Conduct, Canon 4(B) (1992) (effective Jan. 1, 1993) ("A judge may speak, write, lecture, teach, and participate in other extra-judicial activities concerning the law, the legal system, the administration of justice, and non-legal subjects, subject to the requirements of [the Code of Judicial Conduct]").

We hold that because nothing regarding Judge Hey's conduct while a guest on "Crossfire" could have been remotely expected by the parties, the parties did not deal with Judge Hey in his judicial capacity vis-à-vis Judge Hey's defense of his order while he appeared on this television program.

■ The only rational explanation why Judge Hey chose to be a guest on "Crossfire" and publicly comment about a pending case was that he wanted to justify his opinion to as many people as possible. Comments made in pursuit of personal notoriety and national recognition are not judicial acts and are therefore not protected against civil liability.[10]

> Succinctly stated, we hold only that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts." These nonjudicial acts, to state the obvious, are not cloaked with judicial immunity....

*Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981).

**9.** In *In the Matter of Hey*, 188 W.Va. 545, 425 S.E.2d 221 (1992), we found that Judge Hey violated Canon 3(A)(6) of the Judicial Code of Ethics for which he was publicly censured. Canon 3(A)(6), which has since evolved into Canon 3(B)(9), reads as follows:

A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

Judicial Code of Ethics Canon 3(A)(6) (1976).

**10.** We have held that absolute judicial immunity applies to all judicial acts unless those acts performed by the judge fall clearly outside the judge's subject matter jurisdiction. *Fausler v. Parsons*, 6 W.Va. 486 (1873); *see also Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), and *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Because we find that Judge Hey's acts are not "judicial acts," we need not address the issue as to whether those acts were performed outside the judge's subject matter jurisdiction.

Judge Hey asserts an additional reason why his conduct is deserving of absolute immunity. He argues that this Court's opinion in *In the Matter of Hey,* 188 W.Va. 545, 425 S.E.2d 221 (1992), which publicly censured him for his remarks on "Crossfire," should be dispositive of the question of whether his comments on that television program constitute a judicial act and therefore grant him absolute judicial immunity from civil liability.[11]

This argument is fallacious on at least two levels.

First, the opinion in *In the Matter of Hey* was the result of a disciplinary action. We stated that because the doctrine of judicial immunity was not considered upon an adequate record, we would decline to address the application of that doctrine in the context of a judicial disciplinary procedure. Specifically, we recognized that the decision in *In the Matter of Hey* should in no way be treated as having precedential value on the question of when a judge has judicial immunity. *Id.* at 548, 425 S.E.2d at 224 n. 5. This should end the discussion. However, we also recognized in the body of that opinion that the issue of what constitutes a judge's "official duties" under the Judicial Code of Ethics is narrow and has no application outside of a judicial discipline proceeding under the Judicial Code of Ethics. *Id.* at 548, 425 S.E.2d at 224; *see also* Code of Judicial Conduct pmbl. (1992) (effective Jan. 1, 1993). Accordingly, any reference in the previous opinion relating to the public censure that the comments made by Judge Hey arose in the course of his official duties is not relevant to the disposition of the question which we are considering here as to whether or not those comments are deserving of judicial immunity to protect a "judicial act."

## V.

## CONCLUSION

In summary, the doctrine of absolute judicial immunity is designed to safeguard

judges in the performance only of judicial acts involving the exercise of judgment and discretion in the decision-making process. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871); *Harper v. Merckle,* 638 F.2d 848 (5th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981); *Lopez v. Vanderwater,* 620 F.2d 1229 (7th Cir.), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). A judge must have the unfettered ability to exercise judgment and discretion in resolving any dispute without fear of being the subject of a lawsuit claiming damages for the exercise of that judgment and discretion in reaching a decision. There is nothing associated with Judge Hey's remarks on "Crossfire" that needs, or is deserving of, protection.[12]

Reversed and remanded.

CLECKLEY, J., deeming himself disqualified, did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

11. *See supra* note 9.

12. If Judge Hey did nothing more than appear on "Crossfire" and read the order entered August 23, 1989, relating to the custody issue without any further comment or embellishment outside the record, then the factual pattern would

have been more closely aligned with our decision in *Carey v. Dostert,* 185 W.Va. 247, 406 S.E.2d 678 (1991), where we held that alleged defamatory comments made by a judge in a rule to show cause order was protected by the application of the doctrine of absolute judicial immunity.