John C. YODER, et al., Plaintiffs,

v.

Margaret L. WORKMAN, Defendant.

No. CIV.A. 2:02–0139.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 4, 2002.

Hiram C. Lewis, IV, Lewislaw, PLLC, Morgantown, WV, for Plaintiffs.

Ancil G. Ramey, Michelle E. Piziak, Steptoe & Johnson, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's motion to dismiss the remaining count of this civil action. For reasons discussed below, the motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court declines to review the extensive history of litigation and counter-litigation that forms the background to this action, which was fully recounted in its original Memorandum Opinion and Order. *Yoder v. Workman,* C.A. No. 2:02–0139 (S.D.W.Va. July 31, 2002). In that Order the Court dismissed Counts two through six for failure to state a § 1983 claim because Defendant was not acting under color of state law. 42 U.S.C. § 1983. The Court also declined to exercise supplemental jurisdiction over a state law claim (count seven) that was factually interrelated with the dismissed counts and potentially would predominate over the remaining claim.

The single remaining count alleges that when Defendant Workman was a justice of the Supreme Court of Appeals of West Virginia she posted a press release defamatory of Plaintiff Yoder on the court's website. Yoder further alleges that posting chilled his First Amendment right to petition the government. In its July 31 opinion, the Court held this count stated a

claim under § 1983 and ordered Yoder to file an amended complaint containing only the single count.

Defendant now moves to dismiss the amended complaint for failure to state a claim, pursuant to *Rule* 12(b)(6). Fed. R.Civ.P. 12(b)(6). She argues the allegedly defamatory statement of reasons for judicial recusal 1) does not reference Yoder, 2) is subject to absolute judicial immunity and absolute or qualified privilege, and 3) does not contain a provably false statement of fact.

## II. DISCUSSION

### A. Motion to Dismiss

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure:

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendant's motion.

### B. Reference to Yoder

■ The essential elements for a successful common law defamation action by a private individual are (1) defamatory state-

ments, (2) a nonprivileged communication to a third party, (3) falsity, (4) reference to the plaintiff, (5) at least negligence on the part of the publisher, and (6) resulting injury. Syl. pt. 6, *Miller v. City Hosp., Inc.,* 197 W.Va. 403, 411, 475 S.E.2d 495, 503 (1996)(citing Syl. pt. 1, *Crump v. Beckley Newspapers,* 173 W.Va. 699, 320 S.E.2d 70 (1983)). Workman's first objection is that her press release did not refer to Yoder and thus cannot be defamatory of him.

The allegedly defamatory statements in the press release say:

> *Mr. Chafin and his stable of lawyers* have engaged in a vitriolic campaign of judge-shopping. This campaign of spurious and unethical legal actions and false allegations against me has been designed to stalk, harass and defame me as a member of the Judiciary because the legal rulings in which I participated with the other Justices of the Supreme Court did not suit them.

(Amended Compl. ¶ 16.)

> The Restatement of Torts 2d explains:
> One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if,
> (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or
> (b) the circumstances of publication reasonably give rise to the conclusion that there is a particular reference to the member.

Restatement (Second) of Torts § 564A (1977). The comments explain: "When the group or class defamed is sufficiently small, the words may reasonably be understood to have personal reference and application to any member of it so that he is defamed as an individual." *Id.* cmt. (b).

Here both conditions apply to Yoder. Chafin's "stable of lawyers," was comprised of approximately six attorneys who had worked for him on various divorce-related legal matters. *See* July 31 Order at 2 n. 3, 3. Additionally, Workman recused herself and issued the press release four days after Yoder, acting as counsel for Chafin, filed *Chafin v. Workman,* in Kanawha County Circuit Court, alleging violations of § 1983 for Workman's purported conflict of interest in sitting in a case in which Chafin was a party and seeking to enjoin her judicial participation. *See* July 31 Order at 11–12. For both reasons, Yoder was identifiable as a member of the small group or stable of lawyers potentially defamed by Workman's statement.

### C.  Judicial Immunity

■ "When acting in his judicial capacity a judge is immune from civil liability for any and all official acts." *Pritchard v. Crouser,* 175 W.Va. 310, 313, 332 S.E.2d 611, 614 (1985)(citing *Fausler v. Parsons,* 6 W.Va. 486 (1873) and *State ex rel. Payne v. Mitchell,* 152 W.Va. 448, 164 S.E.2d 201 (1968)). There is a threshold two-part test as to when absolute judicial immunity should protect a judge from civil liability. "Absolute judicial immunity applies (1) to all judicial acts unless (2) those acts fall clearly outside the judge's subject matter jurisdiction." *Roush v. Hey,* 197 W.Va. 207, 212, 475 S.E.2d 299, 304 (1996) (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)(other citations omitted)). The test for whether a judge's act is a judicial one is also two-fold. The first factor is whether the act is one normally performed by a judge. The issue is the nature of the act, not the identity of the actor. *Roush* at 213–14;  475 S.E.2d at 304–05 (citing *Stump* at 362, 98 S.Ct. 1099). The second factor is whether the parties dealt with the judge in his judicial capacity and looks to the expectation of the parties. *Id.*

The issue here is whether a judge's publishing a press release on the court's website to explain and elaborate her recusal notice is an act normally performed by a judge. The obvious answer is no. Courts speak through their orders. They do not issue press releases or other "public relations" materials to explain, justify or further inform the public about their decisions. Judicial codes of conduct prohibit judges from making "any public or nonpublic comment about any pending or impending proceeding which might reasonably be expected to affect its outcome or impair its fairness." *Code of Judicial Conduct Canon* 3(B)(9). In this case the public comment accompanied a recusal notice, so the justice herself was no longer involved. Nevertheless, the case continued pending before the court and public comment by a justice about the parties and lawyers involved was inappropriate at best. A press release about the recusal order was not a judicial act and, as such, absolute judicial immunity does not apply to shield its author.

Workman argues that she could "only explain the reasons for her decision to recuse herself in the issuance of a statement of those reasons ... as no opinion was being issued at that time of her recusal." (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 12–13.) Although no opinion issued, Workman issued an Administrative Order, *In re: Voluntary Recusal of the Honorable Margaret L. Workman,* did issue on the same date over the name of Justice Margaret L. Workman, Justice of the Supreme Court of Appeals of West Virginia. The issuance of that order was a judicial act and, in fact, it

contained an account of reasons for the recusal decision:

> In light of a certain civil action instituted by H. Truman Chafin against the Honorable Margaret L. Workman ... which, however frivolous and meritless, will nevertheless require defense; and Justice Workman, being unwilling to leave continued attacks on her judicial integrity unchallenged; it appears that litigation will be necessary.

(*Id.,* Ex. A.)

█ Workman also contends the press release, if not absolutely privileged, was subject to a qualified privilege. As she reports, it is well-settled that a "qualified privilege exists when a person publishes a subject in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." (Def.'s Mem. at 13 (citing *Mauck v. City of Martinsburg,* 167 W.Va. 332, 280 S.E.2d 216 (1981)(other citations omitted)).) Workman's press release was published on the state Supreme Court's website, however, and not limited to those with an interest in the matter, but made available to the general world-wide public via the Internet.[1] Accordingly, no qualified privilege is available to her publication.

### D. Statement of Fact or Rhetorical Hyperbole

█ Finally, Workman contends that the press release statements are rhetorical hyperbole and constitutionally-protected opinion, rather than provably false statements of fact. To repeat, the statements complained of are:

1. Similarly, the privilege for defamatory statements concerning future litigation is available only where the matter is published *"only* to persons with an interest in the prospective judicial proceedings." Defendant misstates the test, by leaving out the crucial word *"only".* (Def.'s Mem. at 10 n. 3.) Again, the publication audience of Defendant's press release was unlimited.

Mr. Chafin and his stable of lawyers have engaged in a vitriolic campaign of judge-shopping. This campaign of spurious and unethical legal actions and false allegations against me has been designed to stalk, harass and defame me as a member of the Judiciary because the legal rulings in which I participated with the other Justices of the Supreme Court did not suit them.

In *Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), a real estate developer negotiated with the city council for a zoning variance on certain land while simultaneously negotiating with the city on other land the city wished to purchase from him. A local newspaper published articles stating some people had characterized the developer's negotiating position as "blackmail," and the developer sued for libel. The Supreme Court rejected the contention, reasoning that "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." *Id.* at 13, 90 S.Ct. 1537. *See also Hustler Magazine, v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (First Amendment precluded recovery under state emotional distress action for ad parody which "could not reasonably have been interpreted as stating actual facts about the public figure involved"); *Letter Carriers v. Austin,* 418 U.S. 264, 284–86, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974)(use of word "traitor" in literary definition of a union "scab" not basis for defamation action since used "in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members").

In contrast, it is not immediately apparent to a reasonable reader that "vitriolic campaign of judge shopping," "spurious and unethical legal actions and false allegations," and "campaign ... designed to stalk, harass and defame me" are used in a loose, figurative or imaginative sense. These phrases could, in fact, be reasonably interpreted as stating actual facts about Yoder as well as Chafin's other lawyers. As Plaintiffs' Complaint alleges:

> Defendant Workman attached and incorporated by reference her February 23, 1999 "Official News Release," made in her capacity as a Justice on the West Virginia Supreme Court of Appeals and posted on the State Supreme Court[']s official website, ... in support of her Ethics complaint against Yoder and as evidence that he engaged in "Judicial Stalking."

(Compl.¶ 24.) The Complaint also alleges:

> In an unsigned statement personally distributed and hand delivered by defendant Workman to news reporters in Beckley, West Virginia, on May 30, 2000, defendant Workman followed up on her Official New[s] Release by further elaborating to the news media on the kind of activity that she considers to be stalking on the part of Yoder, stating that he has "wiretapped phones, peered in windows, followed people, and God knows what."

(Compl.¶ 24.) Both allegations support Plaintiffs' position that Workman has treated her statements not as hyperbole, but as provable fact.[2]

With regard to opinion, the Supreme Court has said, "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The

---

**2.** In a motion to dismiss, the Court accepts the allegations of the Complaint as true.

Court later clarified that this statement was intended to reiterate Justice Holmes' classic "marketplace of ideas" concept and not create a wholesale defamation exception for anything that might be labeled "opinion." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). This *Bresler–Letter Carriers–Falwell* line of cases instead provides protection for statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual. *Id.* at 20, 110 S.Ct. 2695. As noted above, the allegedly defamatory statements made in the press release can reasonably be interpreted as stating facts about Yoder.

For these reasons, the allegedly defamatory statements are neither rhetorical hyperbole nor constitutionally-protected "opinion," but could be determined by a reasonable factfinder to imply an assertion that Yoder performed spurious and unethical legal actions, made false allegations, and stalked, harassed and defamed the Defendant.

### III.  CONCLUSION

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to post a copy on the Court's website at http://www.wvsd.uscourts.gov.