ROBERT R. THOMAS, Plaintiff, v. BILL PAGE, Indiv. and as an Agent and/or Employee of Shaw Suburban Media Group, Inc., a Division of Shaw Newspapers, an Illinois Corporation d/b/a The Kane County Chronicle, *et al.*, Defendants-Appellants and Cross-Appellees (Justices Mary Ann C. McMorrow *et al.*, Nonparty Appellants and Cross-Appellees).

Second District   No. 2—05—0348

Opinion filed October 20, 2005.

Steven P. Mandell, Steven L. Baron, Brendan J. Healey, and Suzanne M. Scheuing, all of Mandell Menkes, L.L.C., of Chicago, for appellants.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, of counsel), for nonparty appellants.

Joseph A. Power, Jr., of Power, Rogers & Smith, P.C., of Chicago, for Robert R. Thomas.

JUSTICE HOFFMAN delivered the opinion of the court:
This interlocutory appeal arises out of a defamation action filed by

the plaintiff, Robert R. Thomas, a justice of the Illinois Supreme Court, against the defendants, Bill Page; Shaw Suburban Media Group, Inc., a division of Shaw Newspapers, an Illinois corporation, d/b/a the Kane County Chronicle; and Greg Rivara. In the underlying complaint, the plaintiff asserts claims for defamation and false light invasion of privacy based upon the publication of certain newspaper articles authored by Page and published in the Kane County Chronicle relating to the supreme court's consideration and resolution of *In re Gorecki*, 208 Ill. 2d 350, 802 N.E.2d 1194 (2003), a disciplinary proceeding involving the Kane County State's Attorney, Mary Elizabeth Gorecki (hereinafter referred to as the "Gorecki Proceedings").

During the course of these proceedings in the circuit court, the defendants caused the issuance of subpoenas which were served upon Supreme Court Justices Mary Ann G. McMorrow, Charles E. Freeman, Thomas R. Fitzgerald, Thomas L. Kilbride, Rita B. Garman, and Philip J. Rarick (hereinafter referred to as the "Non-Party Justices") and their law clerks, seeking the production of all documents referring or relating to the Gorecki Proceedings, the three articles authored by Page, and this suit. Additionally, the defendants caused the issuance of subpoenas for the depositions of the Non-Party Justices and their law clerks. The Non-Party Justices filed a motion to quash the defendants' document subpoenas, asserting the "Doctrine of Judicial Privilege." The circuit court entered an order finding that a judicial deliberation privilege protected communications between and among the Non-Party Justices but, nevertheless, ordered them to submit "a privilege log as per Supreme Court Rule 201(n)" (166 Ill. 2d R. 201(n)) to support their invocation of the privilege. On December 6, 2004, the circuit court entered an order staying all oral discovery from the Non-Party Justices and their law clerks. Thereafter, the circuit court entered an order finding that the judicial deliberation privilege extends to communications between a justice and his or her law clerks, but not to communications between a justice and another justice's law clerk or to communications between law clerks. Additionally, the order provides that, by filing the instant action, the plaintiff has waived the judicial deliberation privilege, including the privilege as it relates to communications between himself and his own law clerks and to communications between his law clerks and a fellow justice or a fellow justice's law clerk.

Subsequently, the circuit court entered a written order finding that its resolution of the matters relating to the existence of a judicial deliberation privilege and its application in this case involve questions of law as to which there are substantial grounds for differences of opinion and that immediate appeal from its orders may materially

advance the ultimate termination of this litigation. In its written order, the circuit court identified the following questions involved:

"a) Does Illinois or should Illinois recognize a judicial deliberation privilege?

b) If there is such a privilege, should it be applied in this case, which involves:

i) a sitting Supreme Court Justice's suit for defamation and false light;

ii) defendants' issuance of subpoenas to the non-party Justices, pursuant to which defendants seek documents relating to the underlying court proceeding and the instant action; and

iii) the non-party Justices' motion to quash defendants' subpoenas based upon the judicial deliberation privilege?

c) If there is such a privilege, does it extend to communications between or among:

i) Supreme Court Justices;

ii) a Supreme Court Justice and his or her own law clerks;

iii) a Supreme Court Justice and another Justice's law clerk; or

iv) the Supreme Court law clerks?

d) Are the movant Justices exempt from the provisions of Supreme Court Rule 201(n)? and

e) If they are not exempt from complying with Supreme Court Rule 201(n), can they assert the claimed privilege without complying with said rule?"

The defendants and the Non-Party Justices filed a joint application for leave to appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), and we granted their application.

It is well-settled that a judge may not be asked to testify as to his or her mental impressions or processes in reaching a judicial decision. See *Fayerweather v. Ritch*, 195 U.S. 276, 307, 49 L. Ed. 193, 213, 25 S. Ct. 58, 67-68 (1904); *Washington v. Strickland*, 693 F.2d 1243, 1263 (5th Cir. 1982), *rev'd on other grounds*, 466 U.S. 668, 20 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In this case, however, we are asked to determine whether Illinois recognizes a privilege protecting judicial deliberations. Resolution of the question necessarily involves an analysis of the scope of such a privilege. The issue is one of first impression in Illinois, and our research has revealed very few cases from other jurisdictions analyzing the question. The majority of the foreign cases which mention the existence of a judicial deliberation privilege do so either in *dicta* or as an accepted fact without any analysis. See *United States v. Morgan*, 313 U.S. 409, 422, 85 L. Ed. 1429, 1435, 61 S. Ct. 999, 1004 (1941); *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994); *Nixon v. Sirica*, 487 F.2d 700, 717 (D.C. Cir. 1973)

(*Sirica*). However, in the case of *In re Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit*, 783 F.2d 1488 (11th Cir. 1986) (*Williams*), the United States Court of Appeals for the Eleventh Circuit addressed the issue directly, and we find its reasoning to be particularly instructive to the question at hand.

In *Williams*, members of the staff of then-Judge Alcee J. Hastings commenced the action to enjoin the enforcement of subpoenas commanding their appearance before a committee of the Eleventh Circuit investigating charges that Judge Hastings had, *inter alia,* conspired to obtain a bribe in return for performing a judicial act. On appeal, the *Williams* court analyzed those cases which had found the existence of an executive privilege and concluded that the reasoning in those cases supported the existence of a judicial deliberation privilege. The privilege recognized in *Williams* encompasses "confidential communications among judges and their staffs in the performance of their judicial duties." *Williams*, 783 F.2d at 1520. The *Williams* court held that the privilege was necessary because "[j]udges *** depend upon open and candid discourse with their colleagues and staff to promote the effective discharge of their duties." *Williams*, 783 F.2d at 1519-20. The *Williams* court further explained that "[c]onfidentiality helps protect judges' independent reasoning from improper outside influences *** [and] safeguards legitimate privacy interests of both judges and litigants." *Williams*, 783 F.2d at 1520. We agree with the court's rationale.

■ The analysis employed by the *Williams* court satisfies the four-part test that Dean Wigmore established for the creation of a privilege against the disclosure of certain communications; namely:

"1. The communications must originate in a *confidence* that they will not be disclosed.

2. This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

3. The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

4. The *injury* that would inure to the relation by the disclosure of the communication must be *greater than the benefit* thereby gained for the correct disposal of litigation." (Emphasis in original.) 8 J. Wigmore, Evidence § 2285, at 527 (McNaughton rev. ed. 1961).

See also *Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208*, 132 Ill. 2d 29, 35, 547 N.E.2d 182 (1989) (*Homer*); *In re October 1985 Grand Jury No. 746*, 124 Ill. 2d 466, 475, 530 N.E.2d 453 (1988).

■ Confidential communications between judges and between

judges and the court's staff certainly "originate in a confidence that they will not be disclosed." Judges frequently rely upon the advice of their colleagues and staffs in resolving cases before them and have a need to confer freely and frankly without fear of disclosure. If the rule were otherwise, the advice that judges receive and their exchange of views may not be as open and honest as the public good requires. See *Soucie v. David*, 448 F.2d 1067, 1080-81 (D.C. Cir. 1971) (Wilkey, J., concurring). In order to protect the effectiveness of the judicial decision-making process, judges cannot be burdened with a suspicion that their deliberations and communications might be made public at a later date. As the United States Supreme Court has observed, "those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705, 41 L. Ed. 2d 1039, 1062, 94 S. Ct. 3090, 3106 (1974). Accordingly, the first and second conditions necessary for the recognition of a privilege are easily satisfied.

With respect to the third condition, we believe that there is a strong public policy favoring the protection of the confidentiality of intra-court communications made in the course of the judicial decision-making process. The very integrity of the process often rests on judges' candid communications with their colleagues and staffs and, as a consequence, the confidentiality of such matters is a necessary component of the process. The purpose of protecting the confidentiality of such communications is designed to benefit the public, not the individual judges and their staffs. See *Commonwealth v. Vartan*, 557 Pa. 390, 400, 733 A.2d 1258, 1264 (1999). If the confidentiality of these intra-court communications were not protected, judges and their staffs would be subject to the pressures of public opinion and might well refrain from speaking frankly during deliberations. Because it is the public who benefits from the impartial and independent resolution of matters which come before a court, the communications between judges and their colleagues and staffs are among those which ought to be protected for the public good. For these same reasons, we also believe that the damage that the judicial decision-making process would suffer from the disclosure of such communications would, in almost every instance, be far greater than the benefit which might be gained by those seeking disclosure. See *Homer*, 132 Ill. 2d at 36 (supreme court found that the damage that would result from disclosing deliberations among school board members concerning collective-bargaining strategy would be greater than the benefit gained by using the information to discover and punish unfair labor practices). Accordingly, the fourth condition for the establishment of a privilege is also satisfied.

The defendants argue that the recognition of a judicial deliberation privilege is not a determination that this court should make because, as a general matter, the recognition of new privileges is strongly disfavored in Illinois. To this end, they note that, when considering the question of whether a "deliberative process privilege" for government officials should be adopted in this state, our supreme court in *People ex rel. Birkett v. City of Chicago*, 184 Ill. 2d 521, 705 N.E.2d 48 (1998), declined to do so, holding that the matter was best left to the legislature. The defendants maintain that the rationale in *Birkett* applies to the instant case and that, because the supreme court declined to recognize a deliberative process privilege for internal communications by municipal employees, an "appearance of impropriety" would arise if this court recognized "a judicial deliberative process privilege for *itself*." (Emphasis in original.) We wholly disagree. Unlike the situation in *Birkett*, in the instant case, we are not being asked to establish a privilege for another branch of government. Rather, the judiciary, as a co-equal branch of government, supreme within its own assigned area of constitutional duties, is being asked to exercise its inherent authority to protect the integrity of its own decision-making process. See *Williams*, 783 F.2d at 1519-20.

Our analysis leads us to conclude that there exists a judicial deliberation privilege protecting confidential communications between judges and between judges and the court's staff made in the course of the performance of their judicial duties and relating to official court business. Therefore, we answer the first certified question in the affirmative.

We next address the question of whose communications are protected by the privilege. No further analysis is necessary to support the conclusion that communications between judges and between judges and their law clerks which fall within the scope of the privilege are protected from disclosure. The very rationale underlying a recognition of the privilege supports our conclusion in this regard. The question remains, however, whether that same protection is afforded to communications between a judge and another judge's law clerk, or between law clerks.

Although law clerks are engaged by a specific judge and serve at his or her direction, the fact remains that they are members of the court's staff. Albeit not an everyday occurrence, judges have been known to confer with another judge's clerk and, when they do, those communications are entitled to no less protection than when the judge is conferring with his or her own clerk. If the judicial deliberation privilege did not extend to communications between a judge and another judge's clerk, judges would certainly be reluctant to seek out

the ideas and insights of another judge's clerk in formulating their decisions and, as a result, judges would not avail themselves of the full resources of the court's staff. We believe that the benefits which enure to the judicial decision-making process through the interchange of ideas between a judge and all of the members of the court's staff would be diminished unless these communications remained confidential, including communications between a judge and another judge's clerk.

The defendants argue that the privilege cannot be applied to communications between law clerks because they "are not cloaked with the responsibility or authority of judicial decision-making." We disagree with the conclusion reached by the defendants in this regard. Although law clerks make no judicial decisions, they are certainly part of the judicial decision-making process. They assist the judges in understanding the legal issues involved in a case and they research those issues. Law clerks confer with the judges, and judges rely on the clerks' ideas and insights in formulating decisions. In this process, clerks frequently discuss cases among themselves in order to clarify and distill the issues before discussing the relative merits of the case with the judge. Law clerks should be free to communicate with each other without fear that their perceptions regarding the merits of pending cases would later become public. Absent such protection, law clerks would forgo the opportunity to test their analysis of a case before conferring with their judges and, as a result, forfeit an opportunity to strengthen the integrity of the judicial decision-making process. We believe that, when law clerks communicate with each other concerning the court's official business, their communications are protected by the judicial deliberation privilege to the same extent as their communications with a judge are. The rationale supporting the recognition of a judicial deliberation privilege covering communications among and between judges and between judges and their law clerks equally supports the application of the privilege to communications between law clerks.

In summary, we answer the third certified question and each of its subparts in the affirmative, and hold that the judicial deliberation privilege applies to communications among and between judges, between judges and their law clerks, between a judge and another judge's law clerk, and between law clerks, provided that the communications are made in the course of the judicial decision-making process and concern the court's official business. Consequently, to the extent that the trial court held that the privilege does not apply to communications between a judge and another judge's law clerk and between law clerks, we conclude that the court erred and vacate that portion of its order.

Having determined both that Illinois recognizes a judicial deliberation privilege and what communications are protected from disclosure thereunder, we next address the nature of the privilege. The defendants argue that, assuming the existence of the privilege, we should find that it is qualified in nature. The Non-Party Justices, on the other hand, contend that the privilege should be deemed absolute.

■ There are crucial distinctions between an absolute and a qualified privilege. If information is protected from disclosure pursuant to an absolute privilege, "the opposing party cannot defeat the privilege by an ad hoc, case-specific showing of need for the privileged information." E. Imwinkelried, *The New Wigmore: A Treatise on Evidence* § 3.2.4, at 139-40 (2002) (hereinafter Imwinkelried). In such a case, the appropriate inquiry is whether the information sought falls within the scope of the privilege. If it does, the information is protected from disclosure and the inquiry ends. By contrast, a qualified privilege can be defeated if the party seeking discovery of the privileged information can demonstrate that his or her need for the materials is sufficiently great to overcome the privilege. Imwinkelried, § 7.2, at 1040; *Williams*, 783 F.2d at 1522. To meet this burden, the party seeking the information must show "the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means." *Williams*, 783 F.2d at 1522. After the burden is met, the court then balances the demonstrated need for the privileged information against the degree of intrusion upon the confidentiality of the privileged communications necessary to satisfy the need. *Williams*, 783 F.2d at 1522.

The defendants correctly note that the *Williams* court held that the judicial deliberation privilege is qualified in nature and, as such, can be overcome by a sufficient showing of need. Extracting the rationale from those cases which found the executive privilege to be qualified, the *Williams* court stated that "[l]ike any testimonial privilege, the judicial [deliberation] privilege must be harmonized with the principle that 'the public *** has a right to every man's evidence' " (*Williams*, 783 F.2d at 1521), and concluded that the need for the information sought must be weighed against the need for confidentiality of the communications sought (*Williams*, 783 F.2d at 1523). The defendants maintain that, based on the *Williams* rationale, we should also hold that the judicial deliberation privilege is qualified.

In the case of *State ex rel. Kaufman v. Zakaib*, 207 W. Va. 662, 535 S.E.2d 727 (2000) (*Kaufman*), the West Virginia Supreme Court held that judicial officers may not be compelled to testify regarding their mental processes used in formulating official judgments or the reasons

that motivate them in their official acts. *Kaufman*, 207 W. Va. at ___, 535 S.E.2d at 735. Although the *Kaufman* court did not speak in terms of an absolute or qualified privilege, it noted that the scope of the privilege is limited to communications relating to a judge carrying out his or her official duties. *Kaufman*, 207 W. Va. at ___, 535 S.E.2d at 735 ("The Court is mindful that this protection from discovery proceedings has its limits, and those limits are that a judge must be acting as a judge, and that it is information regarding his or her role as a judge that is sought"). By addressing the scope of the privilege as opposed to balancing the need for disclosure of the information against the degree of intrusion upon the court's right to confidentiality, we believe that the *Kaufman* court was analyzing a privilege it considered to be absolute in nature.

■ We have already concluded that the judicial deliberation privilege is narrowly tailored, applying only to intra-court communications made in the course of the judicial decision-making process and concerning the court's official business. We believe that the narrowness of the scope of the privilege militates in favor of holding that it is absolute, rather than qualified. The overriding public good requires that judges be able to confer with each other and their staffs freely and frankly without fear that their communications might be publically disclosed. Anything less than the protection afforded by an absolute privilege would dampen the free exchange of ideas and adversely affect the decision-making process. Accordingly, we hold that the judicial deliberation privilege which we recognize today is absolute in nature.

■ Before addressing the remaining three questions and their subparts, we will comment briefly on certain basic principles underlying appeals pursuant to Supreme Court Rule 308. As this court has observed in the past, Rule 308 was intended to be used sparingly and limited to those exceptional circumstances when an interlocutory order of the trial court involves a *"question of law* as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (Emphasis added.) 155 Ill. 2d R. 308(a); *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 257-58, 777 N.E.2d 390 (2002). The rule was never intended to serve as a vehicle to appeal interlocutory orders involving little more than an application of the law to the facts of a specific case. Nor does Rule 308 provide a vehicle for the review of interlocutory discovery orders. *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171, 429 N.E.2d 483 (1981); but see *Bass v. Cincinnati, Inc.*, 180 Ill. App. 3d 1076, 1078, 536 N.E.2d 831 (1989) (questions of law regarding the scope of discovery are appropriate for review under Rule 308).

■ In this case, the second question certified by the trial court and its subparts are not questions of law. Rather, they constitute inquiries as to how the law should be applied to the specific facts of this case. The fifth certified question involves the application of a supreme court rule governing discovery. If these questions had been certified independently, we would never have granted an application for leave to appeal pursuant to Rule 308. However, in the main, these questions involve nothing more than a simple application of our answers to questions one, three, and four. Consequently, in the interests of judicial economy, we will address all of the remaining questions to the extent that we are capable based upon the record before us.

The second certified questions asks us to determine whether the judicial deliberation privilege should be "applied in this case, which involves: i) a sitting Supreme Court Justice's suit for defamation and false light [invasion of privacy]; ii) defendants' issuance of subpoenas to the non-party Justices, pursuant to which defendants seek documents relating to the underlying court proceeding and the instant action; and iii) the non-party Justices' motion to quash defendants' subpoenas based on the judicial deliberation privilege". Having determined that the judicial deliberation privilege is absolute in nature, it follows that the privilege should be applied in any circumstance where the information sought falls within its scope, including a suit for defamation and false light invasion of privacy brought by a supreme court justice. Therefore, we answer the first subpart of the second question in the affirmative. However, the second and third subparts are not so easily resolved. Whether to apply the judicial deliberation privilege to bar discovery of certain documents turns on the question of whether the documents sought fall within the scope of the privilege. There is no question that the privilege bars discovery of any intra-court memoranda or notes generated by the justices of the supreme court and their staffs in the course of the performance of their official duties relating to the resolution of the Gorecki Proceedings. Whether the privilege bars discovery of any of the other documents sought by the defendants in this case depends upon whether any of those documents fall within the scope of the privilege. Resolution of this question rests on a factual inquiry which must be performed by the trial judge. Based on the record before us, we cannot offer any further answer to the second and third subparts of the second certified question. See *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 468-77, 693 N.E.2d 358 (1998); *Morrissey*, 334 Ill. App. 3d at 257-59.

■ In their appellate briefs, the parties address the question of whether, by reason of the plaintiff having filed this litigation, the

judicial deliberation privilege has been waived, even as to communications among and between the Non-Party Justices and their clerks. Clearly, the issue of waiver is of significant importance in this case and any analysis of the issue must necessarily address the question of whether the judicial deliberation privilege belongs to judges and the members of a court's staff as individuals or to the court itself. Yet to be determined is whether any individual judge in a multi-judge tribunal can waive the privilege without the consent of a majority of his or her colleagues. However, the issue of waiver was never meaningfully addressed below and a question of law relating to the issue has not been certified for our review by the circuit court. As a general matter, the scope of review in an interlocutory appeal brought pursuant to Supreme Court Rule 308 is limited to the specific questions of law certified by the circuit court. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998, 803 N.E.2d 1020 (2004). No doubt, we may, when appropriate, go beyond the limits of a certified question. See *Dowd*, 181 Ill. 2d at 472. We decline to do so in this case, however, as a resolution of the waiver issue is not necessary to our analysis of the questions certified by the trial court.

The final two certified questions ask that we consider whether the Non-Party Justices are exempt from complying with the requirements of Supreme Court Rule 201(n) (166 Ill. 2d R. 201(n)) and, if they are not exempt, whether they "can" assert the judicial deliberation privilege without complying with the rule.

■ Supreme Court Rule 201(n) provides:

"When information or documents are withheld from disclosure or discovery on a claim that they are privileged pursuant to a common law or statutory privilege, any such claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced or disclosed and the exact privilege which is being claimed." 166 Ill. 2d R. 201(n).

Nothing in the language of the rule or its history suggests that anyone is exempt from compliance by virtue of his or her office or position. Consequently, as a general statement, the Non-Party Justices are not exempt from compliance with the provisions of the rule merely by virtue of their office or by reason of the fact that they have invoked the judicial deliberation privilege. We, therefore, answer the fourth certified question in the negative.

The fifth certified question asks whether the Non-Party Justices "can" assert the judicial deliberation privilege without complying with Rule 201(n). In answering this question, we must address two issues; namely, whether a privilege may ever be asserted without compliance

with Rule 201(n), and what is required in order to comply with the rule.

■ Ordinarily, " '[o]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. "His mere assertion that the matter is confidential and privileged will not suffice." ' " *Cox v. Yellow Cab Co.*, 61 Ill. 2d 416, 419-20, 337 N.E.2d 15 (1975), quoting *Krupp v. Chicago Transit Authority*, 8 Ill. 2d 37, 42, 132 N.E.2d 532 (1956), quoting *Robertson v. Commonwealth*, 181 Va. 520, 540, 25 S.E.2d 352, 360 (1943). Rule 201(n) provides that a claimed privilege "shall be supported by a description of the nature of the documents, communications or things not produced or disclosed." 166 Ill. 2d R. 201(n). The purpose of the rule is to enable the court to evaluate the applicability of the asserted privilege and determine the need for an *in camera* inspection of the documents, and also to minimize any disputes between the parties regarding those matters. See *FMC Corp. v. Trimac Bulk Transportation Services, Inc.*, No. 98 C 5894, slip op. at 1 (N.D. Ill. 2000) (discussing purpose of privilege log requirement in Federal Rule of Civil Procedure 26(b)(5) which in substance is analogous to Supreme Court Rule 201(n)). However, when a subpoena or a request for production reveals on its face that the documents sought fall within the scope of an absolute privilege, compliance with Rule 201(n) as to those documents serves no useful purpose and is, we believe, entirely unnecessary.

■ "Request No. 1" contained in the document request attached to the subpoenas served upon the Non-Party Justices commands the production of "[a]ll documents relating or referring to the disciplinary case captioned *In re: Mary Elizabeth Gorecki*, No. 96299 before the Illinois Supreme Court, including but not limited to inter-court memoranda among the Justices of the Illinois Supreme Court and notes of any conversations with another Justice." However, as we have already determined, these documents are absolutely protected from disclosure under the judicial deliberation privilege, and one need look no further than the face of the request itself to so conclude. Consequently, as to the documents sought pursuant to the defendants' "Request No. 1," the Non-Party Justices need not comply with the provisions of Rule 201(n) in order to invoke the judicial deliberation privilege. We do not reach the same conclusion, however, with respect to the remaining documents sought by the defendants in the subpoenas served upon the Non-Party Justices.

The remaining documents sought by the defendants consist of communications involving the plaintiff and concerning the three

articles written in the Kane County Chronicle and those relating to this litigation. Contrary to the assertions of the Non-Party Justices, it cannot be immediately determined whether these documents are protected from discovery under the judicial deliberation privilege. Accordingly, with respect to the defendants' demand for production of these documents, the Non-Party Justices must comply with the requirements of Rule 201(n) and shall support their claim of privilege with "a description of the nature of the documents, communications or things not produced or disclosed" and a statement as to the exact privilege claimed (166 Ill. 2d R. 201(n)). That does not, however, necessarily require the preparation and submission of a document-by-document privilege log. If the Non-Party Justices disclose the persons who authored, sent or received the withheld documents and are able to describe the nature of the documents by category sufficient to enable the trial court to determine whether the documents fall within the scope of the claimed privilege and are protected from disclosure, that is all that Rule 201(n) requires.

Based upon our answer to the fifth certified question, we vacate those portions of the circuit court's order requiring that the Non-Party Justices: (1) comply with Rule 201(n) in order to invoke the judicial deliberation privilege in relation to the documents sought by the defendants in "Request No. 1" attached to their document subpoenas; and (2) "file a privilege log."

Certified questions answered; orders vacated in part and cause remanded.

CAHILL and O'BRIEN, JJ., concur.