IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 23-342

_____

**FILED**

**June 7, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
THE HONORABLE TIMOTHY L. SWEENEY,
JUDGE OF THE CIRCUIT COURT OF PLEASANTS COUNTY,
Petitioner,

V.

WILLIAM MUNDY, CHAIRMAN OF THE
LAWYER DISCIPLINARY BOARD HEARING PANEL SUBCOMMITTEE;
LORETTA WALKER SITES, GAIL T. HENDERSON STAPLES,
AND CYNTHIA TAWNEY, MEMBERS OF THE
LAWYER DISCIPLINARY BOARD HEARING PANEL SUBCOMMITTEE; BRIAN
K. CARR; M. PAUL MARTENEY; HARLEY O. WAGNER;
JUSTIN MATTHEW RABER; JAY WILLIAM GERBER, JR.;
IRA ANDRE RICHARDSON; JORDAN W. WEST; WELLS H. DILLON;
THE WEST VIRGINIA LAWYER DISCIPLINARY BOARD;
AND THE WEST VIRGINIA OFFICE OF LAWYER DISCIPLINARY COUNSEL,
Respondents.

_____

**Petition for a Writ of Prohibition**

WRIT GRANTED

_____

Submitted: January 23, 2024
Filed: June 7, 2024

J. H. Mahaney, Esq.
William C. Brown, III Esq.
Dinsmore & Shohl LLP
Huntington, West Virginia
Attorneys for the Petitioner

J. Michael Benninger, Esq.
Benninger Law PLLC
Morgantown, West Virginia
Timothy R. Linkous, Esq.
Linkous Law, PLLC
Morgantown, West Virginia
Attorneys for the Respondent
Brian K. Carr, Esq.

Bader C. Giggenbach, Esq.
Giggenbach Legal, PLLC
Morgantown, West Virginia
Attorney for the Respondent
M. Paul Marteney, Esq.

Robert P. Fitzsimmons, Esq.
Christine Pill Fisher, Esq.
Fitzsimmons Law Firm, PLLC
Wheeling, West Virginia
Attorneys for the Respondent
Harley O. Wagner, Esq.

Michael B. Hissam, Esq.
J. Zak Ritchie, Esq.
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Attorneys for the Respondent
Justin Matthew Raber, Esq.

Brian J. Headley, Esq.
Headley Law Firm LLC
Daniel Island, South Carolina
Attorney for the Respondent
Jay William Gerber, Jr., Esq.

Melvin F. O'Brien, Esq.
Michelle D. Baldwin, Esq.
Dickie McCamey & Chilcote, L.C.
Wheeling, West Virginia
Attorneys for the Respondents

Ira Andre Richardson, Esq. and Jordan W. West, Esq.

William O. Merriman, Esq.
Bill Merriman PLLC
Parkersburg, West Virginia
Attorney for the Respondent
Wells H. Dillon, Esq.

Rachel L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorney for the Respondent
The West Virginia Office of Lawyer Disciplinary Counsel

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Dallas F. Kratzer III, Esq.
Steptoe & Johnson PLLC
Columbus, Ohio
Attorneys for the Respondents
William Mundy, Esq.,
Chairman of the Lawyer Disciplinary Board Hearing Panel Subcommittee;
Loretta Walker Sites,
Gail T. Henderson Staples, Esq., and Cynthia Tawney,
Members of the Lawyer Disciplinary Board Hearing Panel Subcommittee

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1." Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3. "Judicial officers may not be compelled to testify concerning their mental processes employed in formulating official judgments or the reasons that motivated them in their official acts." Syllabus point 3, *State ex rel. Kaufman v. Zakaib*, 207 W. Va. 662, 535 S.E.2d 727 (2000).

4. "There is a two-factor test for determining whether a judge's act is a 'judicial' one. The first factor is whether the act was a function normally performed by a judge. This turns on the nature of the act itself and not on the identity of the actor. The second factor is whether the parties dealt with the judge in his judicial capacity; this factor looks to the expectation of the parties." Syllabus point 5, *Roush v. Hey*, 197 W. Va. 207, 475 S.E.2d 299 (1996).

5. "Judges are not *per se* disqualified from being called as witnesses but should be called as witnesses with caution." Syllabus point 4, *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006).

6. "A judge who is requested to testify as a witness shall discourage the party from requiring him or her to testify; however, the judge may testify when properly summoned upon approval of the trial court and with such limitations as may be imposed by the trial court." Syllabus point 5, *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006).

ii

7.      "In the event a party persists in its effort to require a judge to testify[,] the trial judge shall conduct a hearing and apply the balancing test in Rule 403 of the *West Virginia Rules of Evidence*. At the hearing, the party calling the witness must: (a) state the testimony expected from the judge; (b) explain why the judge's testimony is relevant and necessary to the party's case; and (c) describe the efforts made to obtain the same evidence from alternate sources. The party seeking the judge's testimony must show that the testimony it seeks to introduce is material and favorable to its case, that the testimony is the only possible source of testimony on the relevant information, and, if the case is being tried before a jury, that the testimony is highly pertinent to the jury's task." Syllabus point 6, *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006).

**BUNN, Justice:**

Petitioner, the Honorable Timothy L. Sweeney, Judge of the Circuit Court of Pleasants County, seeks a writ of prohibition to prevent the Hearing Panel Subcommittee ("HPS")[1] of the West Virginia Lawyer Disciplinary Board ("LDB") from enforcing its May 8, 2023 order and May 18, 2023 memorandum opinion directing Judge Sweeney to appear for a deposition and bring certain documents. This matter stems from consolidated lawyer disciplinary proceedings concerning several lawyers: Respondents Brian K. Carr, M. Paul Marteney, Harley O. Wagner, Justin Matthew Raber, Jay William Gerber, Jr., Ira Andre Richardson, and Jordan W. West (collectively "Attorney Respondents"). According to the LDB, these attorneys were involved with a program that the City of St. Marys, West Virginia, previously operated, called "Slow Down for the Holidays" ("the program"). Attorney Carr moved the HPS to depose Judge Sweeney because it was Judge Sweeney who informed the appropriate authorities of the program. The HPS granted the motion, and Attorney Carr served Judge Sweeney with a notice of deposition and a subpoena to provide testimony and certain documents. In response, Judge Sweeney moved to quash the

---

[1] Counsel for the members and chairman of the Lawyer Disciplinary Board Hearing Panel Subcommittee made an appearance in this case but did not file a brief or present oral argument.

Attorney Wells H. Dillon was also involved in the underlying lawyer disciplinary proceedings and is a named respondent in this matter before the Court. However, Attorney Dillon has not filed any documents with this Court. The Office of Lawyer Disciplinary Counsel ("ODC") represented in its briefing that Attorney Dillon is no longer a part of the consolidated disciplinary proceedings and has entered factual stipulations; his disciplinary matter is still pending before the Hearing Panel Subcommittee ("HPS"); and he is awaiting a written recommendation to be filed with this Court.

1

subpoena, which the HPS denied. In support of his request for a writ of prohibition before this Court, Judge Sweeney argues that the judicial deliberative privilege applies to the requested deposition testimony and documents. For the reasons stated below, we grant the writ.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The following statement of facts merely recites what is contained in the record and has been alleged in the underlying lawyer disciplinary proceedings. Given that the lawyer disciplinary proceedings are ongoing, we do not resolve any disputed facts and provide the following recitation to provide context for our decision in this matter.

Over thirteen years ago, the St. Marys Police Department introduced the program. Pursuant to the program, each year during a specific time approved by the City of St. Marys—usually early October through early December—the municipal court judges and the city attorney agreed to summarily dismiss, with prejudice, certain criminal charges if the person charged donated money, gift cards, toys, or other things of monetary value to benefit needy children and seniors during the holiday season. In 2018, the Pleasants County Sheriff's Office joined the program, and at some point, two magistrates in Pleasants County also began participating.

2

In late 2020, the State of West Virginia charged Mary Ward with driving under the influence and knowingly or intentionally possessing a controlled substance without a valid prescription. Attorney Judith McCullough was appointed to represent Ms. Ward. During a pre-trial hearing, the State—acting through Attorney Carr, the Prosecuting Attorney of Pleasants County—offered to dismiss the pending charges against Ms. Ward in exchange for her making a payment of $1,500 in cash or gift cards to the program. Attorney McCullough communicated the offer to Ms. Ward. Despite Attorney McCullough's recommendation to reject the offer, Ms. Ward directed her to accept it. After Ms. Ward accepted the offer and made the payment, the State, by Attorney Carr, moved to dismiss the charges.

Following the dismissal of Ms. Ward's criminal charges, Attorney McCullough, concerned about her own conduct, spoke with several members of the legal community regarding the agreement[2] and dismissal. Other attorneys cast doubt on the ethical propriety of the program and at least one suggested Attorney McCollough speak to a judge. Attorney McCullough then contacted Judge Sweeney, the only circuit judge in Pleasants County, to express her reservations about the program and disclose her actions regarding Ms. Ward's case. Attorney McCullough had known Judge Sweeney in a professional capacity for several years.

---

[2] The LDB asserted that this was not a plea agreement but rather a "dismissal order by motion of the State of pending criminal charges for the illegal payment of money outside of the [S]tate's unified court system."

3

After speaking with Attorney McCullough, Judge Sweeney called the Office of Judicial Disciplinary Counsel ("JDC")[3] and the Office of Lawyer Disciplinary Counsel ("ODC") to inform them of the program. Judge Sweeney did not file a formal verified ethics complaint, and the ODC did not ask him to file one. The ODC initiated an investigation, and several attorneys, including Attorney Carr, self-reported their conduct to the ODC. Subsequently, the LDB filed formal statements of charges against the Attorney Respondents. In February 2021, this Court consolidated these disciplinary proceedings for discovery purposes.

On March 3, 2023, Attorney Carr moved the HPS to depose the complainant pursuant to Rule 3.4 of the West Virginia Rules of Lawyer Disciplinary Procedure.[4] The HPS granted the motion and directed the ODC to identify the individual who first asserted claims against Attorney Carr. The HPS further instructed that the deposition take place within thirty days of the order. In response, the ODC moved the HPS to reconsider its order arguing that, while Judge Sweeney contacted the ODC regarding the program, he did not

---

[3] The Judicial Investigation Commission ("JIC") became involved due to the participation of two magistrates in the program. The JIC resolved those matters by public admonishments and agreements that both magistrates immediately resign and never seek public office again.

[4] Rule 3.4 of the West Virginia Rules of Lawyer Disciplinary Procedure provides, in relevant part, that "[t]he respondent shall be entitled to depose the complainant or complainants on any charge. No other depositions or other method of discovery shall be permitted except upon motion to the Chairperson of the Hearing Panel Subcommittee and only upon a showing of good cause for such additional discovery."

4

file a formal complaint and was not the complainant. The ODC asserted that the ODC itself is the complainant in this matter, and there was no good cause to depose a representative of the ODC. Attorney Carr opposed the ODC's motion to reconsider. The HPS entered a second order on the motion to depose the complainant, finding that Judge Sweeney and Attorney McCullough were the complainants and directing that the depositions of Judge Sweeney and Attorney McCullough be completed.[5]

Pursuant to the HPS's second order, Attorney Carr served Judge Sweeney with a notice of deposition and attached a subpoena requiring him to provide deposition testimony and produce the following:

> Any and all paper and/or digital/electronic files, documents, writings, e-mails, text messages, and notes, evidencing any report, notice, or communication with the Judicial Investigation Commission [("JIC")] and its counsel, JDC, and the Lawyer Disciplinary Board and its counsel, ODC, concerning the "Slow Down for the Holidays" program authorized, created, operated, and maintained by the City of St. Marys, West Virginia, and any misdemeanor criminal cases filed and adjudicated by the Pleasants County Magistrate Court during the years 2018 through the present, which involved in any way the referral, deferral, or dismissal of same so that a Defendant could participate in the "Slow Down for the Holidays" program.

---

[5] Attorney McCullough was deposed on May 17, 2023.

Judge Sweeney, the ODC, and the JIC each filed separate motions to quash the subpoena. In his motion, Judge Sweeney argued that the documents and testimony sought are protected by the judicial deliberative privilege.[6]

On May 8, 2023, the HPS entered an order summarily denying the respective motions to quash and directing that Judge Sweeney submit to a deposition by May 19, 2023, and produce the subpoenaed documents. Thereafter, the HPS filed a memorandum opinion explaining its previous ruling by concluding that Judge Sweeney's involvement "was reporting the program to [the] ODC" and that this testimony does not fall within the judicial deliberative privilege. The HPS reasoned that the judicial deliberative privilege does not apply because Judge Sweeney was not acting in his capacity as a judge in any of the Attorney Respondents' cases when he reported these issues to the JDC and ODC. Judge Sweeney then filed this petition for a writ of prohibition.[7]

---

[6] Attorney Carr responded to the JIC and ODC motions to quash. It is unclear from the record whether Attorney Carr also responded to Judge Sweeney's motion to quash. Attorney Carr asserts that he filed a response while Judge Sweeney states that a response was not filed. No response is included in the record.

[7] The HPS entered an order staying the deposition pending the resolution of the petition.

## II.

## STANDARD FOR ISSUANCE OF WRIT

The writ of prohibition is sought against the LDB and HPS acting as a quasi-judicial tribunal. We have previously "determined that prohibition lies not only to judicial tribunals, but to inferior ministerial tribunals possessing incidentally judicial powers and known as quasi-judicial tribunals. *See Wiseman v. Calvert*, 134 W. Va. 303, 59 S.E.2d 445 (1950)[.]" *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W. Va. 687, 692, 520 S.E.2d 854, 859 (1999) (per curiam) (additional citations omitted). This Court has further explained that "[t]his includes administrative tribunals having quasi-judicial power when acting in a quasi-judicial capacity. *See United States Steel Corp. v. Stokes*, 138 W. Va. 506, 76 S.E.2d 474 (1953)." *Id.* Thus, a writ of prohibition is a proper mechanism to seek relief under these circumstances. *See State ex rel. York v. W. Va. Off. of Disciplinary Couns.*, 231 W. Va. 183, 187 n.5, 744 S.E.2d 293, 297 n.5 (2013) ("In the present case, however, a writ of prohibition is also sought against the LDB, acting as a quasi-judicial tribunal. *See Farber v. Dale*, 182 W. Va. 784, 786, 392 S.E.2d 224, 226 (1990) ([explaining] that 'the West Virginia State Bar Committee on Legal Ethics [predecessor to the current Investigative Panel of the LDB] is a quasi-judicial tribunal.')." (second alteration in original)).

It has long been established that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*,

7

53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). Here, Judge Sweeney claims that the HPS exceeded its legitimate powers.

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

### III.

### DISCUSSION

The HPS clearly erred when it ordered Judge Sweeney to submit to deposition and produce documents in the underlying disciplinary proceeding. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. As explained below, we find that the testimony and records sought by the subpoena are protected by the judicial deliberative privilege.[8]

---

[8] *State ex rel. Hoover v. Berger* instructs that "all five factors need not be satisfied[.]" Syl. pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d

8

While judicial officers *may* be compelled to give testimony and provide documents in certain circumstances, this Court's precedent limits those circumstances and places specific threshold requirements on the party seeking the testimony and documents. In *State ex rel. Kaufman v. Zakaib*, this Court considered whether a judicial official could be deposed in relation to his mental processes and official judgments. 207 W. Va. 662, 535 S.E.2d 727 (2000).[9] The underlying matter in that case stemmed from a divorce proceeding over which Judge Kaufman presided. *Id.* at 665, 535 S.E.2d at 730. After protracted proceedings, one party initiated a lawsuit against the opposing party's attorney, among others, alleging that the attorney and an expert witness "conspired to provide the court with false information[.]" *Id.* at 666, 535 S.E.2d at 731. The plaintiff sought to depose Judge Kaufman regarding the divorce proceeding. *Id.* Judge Kaufman filed a petition for a writ of prohibition to prohibit the deposition. *Id.*

This Court recognized that while "judges are subject to the rule of law as much as anyone else, [we] cannot ignore the special status that judges have in our judicial

---

12 (1996). Because we find that the HPS clearly erred, we need not find whether all five factors are satisfied.

[9] Other courts have explained that limiting judicial officers' testimony relating to their mental processes and official judgments "serves to protect not just the judge individually but the decision-making process necessary to ensuring an independent and impartial judiciary." *In re Enf't of Subpoena*, 972 N.E.2d 1022, 1034 n.7 (Mass. 2012); *see also United States v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981) (because "judges are under no obligation to divulge the reasons that motivated them in their official acts[,] the mental processes employed in formulating the decision may not be probed"), *aff'd*, 742 F.2d 1279 (11th Cir. 1984).

system, and the effect this difference has on the process." *Kaufman*, 207 W. Va. at 668, 535 S.E.2d at 733. We noted that there are various prohibitions on requiring a judicial officer's testimony: (1) a judicial officer cannot be a witness in a matter over which the judicial officer also presides and (2) a judicial officer cannot voluntarily be a character witness. *Id.* Ultimately, in *Kaufman*, we identified another limitation on judicial testimony: the judicial deliberative privilege.[10] We held that "[j]udicial officers may not be compelled to testify concerning their mental processes employed in formulating official judgments or the reasons that motivated them in their official acts." Syl. pt. 3, *Kaufman*, 207 W. Va. 662, 535 S.E.2d 727.

---

[10] While the *Kaufman* Court did not explicitly label this limitation on discovery as a "privilege," it essentially has that effect. Further, other courts adopting this same limitation on discovery have termed it the "judicial deliberative privilege." *See, e.g.*, *In re Enf't of Subpoena*, 972 N.E.2d at 1032 ("Consequently, we join other courts, State and Federal, that, when faced with attempts by third parties to extract from judges their deliberative thought processes, have uniformly recognized a judicial deliberative privilege. *See* [*Matter of Certain Complaints Under Investigation by an Investigating Comm. of the Jud. Couns. of the Eleventh Cir.*, 783 F.2d 1488, 1517-20 (11th Cir.), *superseded by statute on other grounds as stated in In re McBryde*, 120 F.3d 519, 524 (5th Cir. 1997)]; *Thomas v. Page*, 361 Ill.App.3d 484, 491, 297 Ill. Dec. 400, 837 N.E.2d 483 (2005); *In re Cohen's Estate*, 105 Misc. 724, 725-726, 174 N.Y.S. 427, 428 (N.Y. Sur. 1919); *Leber v. Stretton*, 928 A.2d 262, 270 (Pa. Super. 2007); *State ex rel. Kaufman v. Zakaib*, 207 W. Va. 662, 670, 535 S.E.2d 727 (2000)."); *Harris v. Goins*, No. CV 6: 15-151-DCR, 2016 WL 4501466, at *1 n.1 (E.D. Ky. Aug. 26, 2016) ("In light of the important interests served by the recognition of a judicial deliberative privilege, . . . we agree with the Illinois Appeals Court, *Thomas v. Page*, [361 Ill.App.3d 484, 491, 297 Ill. Dec. 400, 837 N.E.2d 483 (2005)], and the West Virginia Supreme Court, *State ex rel. Kaufman v. Zakaib*, [207 W. Va. 662, 535 S.E.2d 727 (2000)], that the best approach is to consider this privilege narrowly tailored but absolute." (quotations and citation omitted)).

This Court cautioned that this "protection from discovery" is not limitless. *Kaufman*, 207 W. Va. at 670, 535 S.E.2d at 735. Rather, to fall under this privilege "a judge must be acting as a judge, and that it is information regarding his or her role as a judge that is sought." *Id.* We explained that there will certainly be situations where "people, who happen to be judges, witness events that are material to a given case." *Id.* at 671, 535 S.E.2d at 736. For example, a judicial officer may witness a car accident or become involved in personal litigation. *Id.* In those instances, "acts that simply happen to have been done by judges" would not be encompassed in this privilege. *Id.* (quotations omitted). *Kaufman* did not specifically define what constitutes an official judgment or act; however, in a similar context regarding judicial immunity,[11] we held that

> [t]here is a two-factor test for determining whether a judge's act is a "judicial" one. The first factor is whether the act was a function normally performed by a judge. This turns on the nature of the act itself and not on the identity of the actor. The second factor is whether the parties dealt with the judge in his judicial capacity; this factor looks to the expectation of the parties.

Syl. pt. 5, *Roush v. Hey*, 197 W. Va. 207, 475 S.E.2d 299 (1996).

---

[11] In this related context of judicial immunity, this Court has previously held that a judicial officer is absolutely immune from civil liability for official judicial acts. *See* Syl. pt. 1, *Fausler v. Parsons*, 6 W. Va. 486 (1873) ("Where the subject matter and the person are within the jurisdiction of the court, the judge, whether of a superior or inferior court, is not subject to a civil action for any matter done by him in the exercise of his judicial functions."); *see also* Syl. pt. 2, *Roush v. Hey*, 197 W. Va. 207, 475 S.E.2d 299 (1996) ("'When acting in his judicial capacity a judge is immune from civil liability for any and all official acts.' *Pritchard v. Crouser*, 175 W. Va. 310, 313, 332 S.E.2d 611, 614 (1985).").

11

Here, the Attorney Respondents assert that "[t]he testimony sought to be obtained from [Judge Sweeney] in this case involves the facts and circumstances surrounding the verbal report that he initiated . . . with [the] JIC and ODC[.]" The Attorney Respondents argue that the judicial deliberative privilege does not apply to the testimony they seek to compel because the information does not involve a judicial proceeding over which Judge Sweeney "presided or formulated an official judgment." While *Kaufman* makes clear that the judicial deliberative privilege is not limitless, it does not mandate that the judicial officer asserting the privilege preside over the proceeding at issue.

The *Kaufman* limitation on judicial testimony applies in the following circumstances: "a judge must be acting as a judge, and that it is information regarding his or her role as a judge that is sought." *Id.* at 670, 535 S.E.2d at 735. Judge Sweeney contends that his report to the ODC was an official judicial act because he was acting pursuant to his obligation to comply with Rule 2.15 of the Code of Judicial Conduct,[12] which requires a

_____

[12] Rule 2.15 of the West Virginia Code of Judicial Conduct provides, in relevant part, as follows:

> (B) A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority.

> . . . .

> (D) A judge having knowledge indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action.

12

judge to take "appropriate action" when the judge believes a lawyer's conduct might be in violation of the Rules of Professional Conduct. Under the circumstances presented in this case, we agree.

In Attorney McCollough's sworn statement to the ODC, she represented that she had known Judge Sweeney for a long period of time. After her client participated in the program, she continued to feel uneasy about her own role relative to the program and sought out Judge Sweeney. Attorney McCollough explained the program to Judge Sweeney, and he indicated he could not let this conduct continue. Attorney McCollough's deposition given in the underlying proceeding provides further support. During her deposition, Attorney McCullough represented that she knew Judge Sweeney in a professional capacity, as both a prosecutor and a judge, but did not have an otherwise personal relationship with him. She explained that, when discussing her part in the program with members of the legal community, at least one of the attorneys suggested she speak to a judge about her participation. Attorney McCollough sought out Judge Sweeney because she respected him as a judicial officer, and she had concerns over the program and her participation. Attorney McCullough's testimony in her deposition and sworn statement to the ODC establish that she spoke with Judge Sweeney because of his position as a judge. Consequently, requiring Judge Sweeney to testify regarding his decision to report the attorney conduct pursuant to his judicial obligation under Rule 2.15 would invade "an official's good-faith decision-making prerogatives." *Kaufman*, 207 W. Va. at 670 n.9, 535 S.E.2d at 735 n.9 (quotations and citation omitted).

Similarly, the *Roush* two-factor test for determining whether a judge's act is a "judicial" one in the related context of judicial immunity would also be satisfied. *See* Syl. pt. 5, *Roush*, 197 W. Va. 207, 475 S.E.2d 299. First, the act of reporting certain conduct pursuant to the Code of Judicial Conduct is unquestionably "a function normally performed by a judge." *See* West Virginia Code of Judicial Conduct Application (providing that the Code of Judicial Conduct applies to "[a]nyone, whether or not a lawyer, who is an officer of a judicial system and who performs judicial functions, including but not limited to . . . Circuit Judges, . . . is a judge within the meaning of the Code."). Additionally, the second factor—whether the parties dealt with the judge in his judicial capacity—is also met. Attorney McCullough testified that she sought the guidance of Judge Sweeney solely because of his position as a judicial officer.

However, this conclusion is not the end of our inquiry. We must next consider whether the HPS's order allows the Attorney Respondents to also seek information that may fall outside the judicial deliberative privilege. While the Attorney Respondents assert that they only seek to depose Judge Sweeney relating to the decision to report the conduct involving the program to the ODC and JIC, the notice of deposition contains no such limitation. In fact, the HPS's memorandum decision denying Judge Sweeney's motion to quash states that the Attorney Respondents are seeking testimony regarding Judge Sweeney's "knowledge of the program, what he knew about it, when he knew about it, how he knows about it[,] and who he knew was involved in the program." Arguably, portions of these topics may be outside of the scope of Judge Sweeney's mental

14

processes regarding his decision to report.[13] To the extent that the Attorney Respondents are seeking testimony outside of Judge Sweeney's decision to report the attorney conduct pursuant to his judicial obligation under Rule 2.15, the HPS clearly erred by failing to require a hearing pursuant to *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006), which sets forth the limited circumstances in which judicial testimony may be compelled.

Following this Court's decision in *Kaufman*, the Court again considered whether a judicial officer could be compelled to testify as a witness. *See generally Hatcher*, 221 W. Va. 5, 650 S.E.2d 104. In *Hatcher*, we recognized that although there are circumstances where a judicial officer may provide testimony in a legal proceeding, "there is a potential for abuse through the use of judicial testimony, and accordingly h[e]ld that our trial courts should apply [certain] guiding principles[.]" *Id.* at 14, 650 S.E.2d at 113. Those guiding principles, in relevant part, are as follows:

> 4. Judges are not *per se* disqualified from being called as witnesses but should be called as witnesses with caution.

> 5. A judge who is requested to testify as a witness shall discourage the party from requiring him or her to testify; however, the judge may testify when properly summoned upon approval of the trial court and with such limitations as may be imposed by the trial court.

---

[13] Additionally, the documents sought by the subpoena attached to the notice of deposition demonstrate that Attorney Respondents may be seeking information beyond Judge Sweeney's decision to report to the JIC and ODC. Attorney Respondents demanded that Judge Sweeney produce certain documents from criminal cases adjudicated in the Magistrate Court of Pleasants County. Those documents and any testimony from Judge Sweeney regarding their contents would likely go beyond Judge Sweeney's decision to report.

6. In the event a party persists in its effort to require a judge to testify[,] the trial judge shall conduct a hearing and apply the balancing test in Rule 403 of the *West Virginia Rules of Evidence*.[14] At the hearing, the party calling the witness must: (a) state the testimony expected from the judge; (b) explain why the judge's testimony is relevant and necessary to the party's case; and (c) describe the efforts made to obtain the same evidence from alternate sources. The party seeking the judge's testimony must show that the testimony it seeks to introduce is material and favorable to its case, that the testimony is the only possible source of testimony on the relevant information, and, if the case is being tried before a jury, that the testimony is highly pertinent to the jury's task.

Syl. pts. 4-6, *Hatcher*, 221 W. Va. 5, 650 S.E.2d 104 (footnote added).

Neither the Attorney Respondents' notice of deposition nor the HPS's order and memorandum decision place any limitations on the testimony to be elicited from Judge Sweeney in the HPS proceeding. In his motion to quash, Judge Sweeney specifically asked the HPS to allow him the opportunity to respond and for the HPS to "carefully scrutinize each topic area" as to the need and materiality, and to identify other sources of information that may be available in the event the Attorney Respondents were seeking testimony on non-deliberative issues. There is no indication in the record that the HPS responded to Judge Sweeney's request.

---

[14] Rule 3.6 of the West Virginia Rules of Lawyer Disciplinary Procedure, in part, generally provides that "[e]xcept where otherwise provided for by these rules, the provisions of the West Virginia Rules of Evidence shall govern proceedings before the Hearing Panel."

16

Applying the *Hatcher* principles to the present matter, while Judge Sweeney was not per se "disqualified" from providing testimony, guidelines must be followed. The Attorney Respondents were persistent in their quest to depose Judge Sweeney, a judicial officer. Consequently, pursuant to Syllabus point 6 of *Hatcher*, the HPS was required to hold a hearing to balance the interests involved when a judicial officer is asked to present testimony in a legal proceeding. [15] Because the HPS failed to hold the required hearing, the Attorney Respondents were also unable to "show that the testimony [they] seek[] to introduce is material and favorable to [their] case [and] that the testimony is the only possible source of testimony on the relevant information[.]" Syl. pt. 6, in part, *Hatcher*, 221 W. Va. 5, 650 S.E.2d 104. Ultimately, the HPS clearly erred in requiring Judge Sweeney to appear for a deposition because the information that Attorney Carr sought regarding Judge Sweeney's mental processes and his decision to verbally report conduct to the JIC and ODC was protected through the judicial deliberative privilege, and, to the extent that any information sought was outside of the privilege, the HPS failed to hold the mandatory hearing pursuant to *Hatcher*.

---

[15] We find it of no moment that *Hatcher* involved a judicial officer testifying in court during a trial and that the present matter involves a judicial officer testifying in a deposition. *Hatcher* makes no specific distinction between the two types of testimony. Additionally, other courts applying a similar test have applied it to both trial testimony and deposition testimony. *See generally France v. Chippewa Cnty.*, No. 2:20-CV-248, 2022 WL 20016164, at *2 (W.D. Mich. Apr. 14, 2022), *aff'd*, No. 2:20-CV-248, 2022 WL 20016166 (W.D. Mich. Nov. 7, 2022); *Watkins v. City of New York*, No. 14-CV-0887 JMF, 2015 WL 4865139, at *2-3 (S.D.N.Y. Aug. 13, 2015); *Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 WL 10689208, at *8-9 (N.D. Ohio May 29, 2009).

As a final matter, we turn to whether Judge Sweeney was required to provide the requested documents. The subpoena requested all documents "evidencing any report, notice, or communication" with the JIC and/or its counsel and the LDB and/or its counsel concerning the program. For the same reasons set forth above, the judicial deliberative privilege protects these documents. *See Kaufman*, 207 W. Va. at 667 n.6, 535 S.E.2d at 732 n.6 ("[T]his court would look with disfavor upon any attempt to do indirectly what this opinion prevents a party from doing directly. However labeled, any attempt to invade the thought processes of a judge, 'would be destructive of judicial responsibility' *United States v. Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 1004-05, 85 L. Ed. 1429, 1435 (1941), and will not be permitted."). *See also In re Enf't of Subpoena*, 972 N.E.2d 1022, 1036 (Mass. 2012) ("In the present case, so much of the subpoena as relates to the judge's internal thought processes and deliberative communications, memorialized in notes, diaries, or otherwise, must be quashed.").

Further, the subpoena also requests all documents regarding any misdemeanor criminal cases filed and adjudicated by the Magistrate Court of Pleasants County during the years 2018 through the present, "which involved in any way the referral, deferral, or dismissal of same so that a Defendant could participate in the 'Slow Down for the Holidays' program." Judge Sweeney argues that he is not the proper custodian of these records "to whom such a request should be made." We agree. This Court has previously explained that "magistrate court clerks are the statutorily designated custodians of magistrate court records." *State v. McCraine*, 214 W. Va. 188, 197, 588 S.E.2d 177, 186

18

(2003), *overruled on other grounds by State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014).[16] Accordingly, because we find that the HPS clearly erred in directing Judge Sweeney to submit to a deposition and provide the requested documents under these circumstances, we grant the requested writ of prohibition. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.[17]

## IV.

## CONCLUSION

The Lawyer Disciplinary Board Hearing Panel Subcommittee is prohibited from enforcing its May 8, 2023 order directing Judge Sweeney to appear for deposition and produce documents and its May 18, 2023 memorandum opinion ordering the same.

Writ granted.

---

[16] *See also* W. Va. Code § 50-3-7 (providing that records of completed magistrate court proceedings are to be forwarded and maintained by magistrate court clerk in accordance with rules of this Court); W. Va. Admin. R. Mag. Ct. 12 (stating that magistrate court clerks are to maintain magistrate court records according to the prescribed record retention schedule).

[17] Both Judge Sweeney and the ODC also argue that Judge Sweeney was not the official complainant of the attorney disciplinary matters, and accordingly, his deposition is not required absent a showing a good cause. *See* Rule 3.4 of the West Virginia Rules Disciplinary Procedure. *See also supra* note 4. However, because we resolve this matter on other grounds, we decline to address whether Judge Sweeney was the complainant.